UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

```
-------------------------------------------------- x
                                                   :      Chapter 11
In re:                                             :
The Louisville Orchestra, Inc.                     :      Case No. 10-36321
                                                   :
                                                   :
        Debtor                                     :
                                                   :
-------------------------------------------------- x
```

**DISCLOSURE STATEMENT PURSUANT TO
SECTION 1125 OF THE BANKRUPTCY CODE WITH
RESPECT TO PLAN OF REORGANIZATION**


VALENTI HANLEY & ROBINSON, PLLC
1950 Riverfront Plaza
401 W. Main St.
Louisville, KY 40202
(502) 568-2100

Counsel for the Debtor

Dated:	May 30, 2011
Louisville, Kentucky

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF KENTUCKY UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN.  IMMEDIATELY PRIOR TO THE HEARING ON THE CONFIRMATION OF THE PLAN, PURSUANT TO AUTHORIZATION OF THE BANKRUPTCY COURT ISSUED AT A HEARING CONDUCTED ON _____ __, 2011 THE DEBTOR INTENDS TO SEEK APPROVAL OF THE DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" UNDER SECTION 1125(a)(1) OF THE BANKRUPTCY CODE.  IN THE EVENT THAT THIS DISCLOSURE STATEMENT IS NOT APPROVED, THE DEBTOR WILL MAKE ALL APPROPRIATE AMENDMENTS TO THIS DISCLOSURE STATEMENT AND RESOLICIT ACCEPTANCES OF THE PLAN IN ACCORDANCE WITH THE BANKRUPTCY CODE AND APPLICABLE BANKRUPTCY COURT ORDERS.

I. INTRODUCTION .......................................................................................................... 2
    A.    Preliminary Statement .......................................................................... 3
    B.    Description of the Debtor' Businesses ................................................. 3
    C.    The Debtor and the Filing of the Plan .................................................. 3
    D.    Notice to Holders of Claims Entitled to Vote ........................................ 4
    E.    Disclosure Statement Enclosures ....................................................... 5
    F.    Voting Procedures, Balloting and Voting Deadlines ............................. 6
    G.    Hearing on and Objections to Confirmation ........................................ 7

II. GENERAL INFORMATION .......................................................................... 7
    A.    Overview of the Debtor' Present Status ............................................... 7
    B.    Existing Board of Directors and Executive Officers of the Debtor ............. 8
    C.    History of the Debtor .......................................................................... 8
    D.    Sources of Funding ............................................................................ 9

III. THE REORGANIZATION CASE ................................................................. 10
    A.    Commencement of the Reorganization Case ....................................... 10
    B.    No Statutory Creditors' Committee ..................................................... 11
    C.    Purpose of the Reorganization Case .................................................. 11
    D.    Proceedings in the Reorganization Cases ........................................... 11

IV. SUMMARY OF THE PLAN ........................................................................ 12
    A.    Overview of the Plan .......................................................................... 12
    B.    Summary of Treatment of Claims and Equity Interests ......................... 13
    C.    Classes of Claims ............................................................................. 15
    D.    Board of Directors and Executive Officers of the Reorganized Debtor .... 16
    E.    Business of the Reorganized Debtor ................................................... 17
    F.    Releases ........................................................................................... 17
    G.    Term of Injunctions or Stays .............................................................. 18

V. SUMMARY OF OPERATIONS .................................................................... 18

VI. PROJECTIONS ........................................................................................ 18
    A.    Projected Financial Statements .......................................................... 18

VII. LIQUIDATION VALUATION ...................................................................... 20
    A.    Estimated Liquidation Value of Assets ................................................ 20
    B.    Impact of Liquidation ......................................................................... 20
    C.    Conclusion ........................................................................................ 21

VIII. RISK FACTORS ..................................................................................... 21
    A.    Deviation from Projections ................................................................. 21
    B.    Impact of Bankruptcy ........................................................................ 21

IX. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF
    THE PLAN.............................................................................................. 21

X.  VOTING PROCEDURES AND REQUIREMENTS.................................................... 22
    A.      Parties in Interest Entitled to Vote............................................. 23
    B.      Acceptance of the Plan ........................................................... 23

XI.  CONFIRMATION AND CONSUMMATION OFTHE PLAN .................................... 24
    A.      Disclosure Statement and Confirmation Hearing ..................................... 24
    B.      Conditions to Confirmation of the Plan..................................................... 25
    C.      Consummation........................................................................................ 31

XII.  CONCLUSION ..................................................................................................... 31

DISCLOSURE STATEMENT
DATED MAY 30, 2011

with respect to the
Plan of Reorganization

THIS DISCLOSURE STATEMENT RELATING TO THE DEBTOR'S PLAN OF REORGANIZATION (THE "*DISCLOSURE STATEMENT*") INCLUDES AND DESCRIBES THE PLAN OF REORGANIZATION ("*PLAN*") FOR THE ABOVE CAPTIONED DEBTOR-IN-POSSESSION (THE "*DEBTOR*").  THE PLAN IS ATTACHED HERETO AS **EXHIBIT 1**.

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR THE HOLDERS OF CLAIMS IN EVERY CLASS.  ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ARE URGED TO VOTE IN FAVOR OF THE PLAN.  VOTING INSTRUCTIONS ARE CONTAINED IN THE SECTION ENTITLED "*VOTING PROCEDURES AND REQUIREMENTS*" HEREIN.  TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED, EXECUTED, AND RECEIVED BY 4:00 P.M., EASTERN STANDARD TIME, ON _____ __, 2011.

No person other than the Debtor is authorized in connection with the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits and schedules attached hereto or incorporated by reference or referred to herein.  The delivery of this Disclosure Statement will not imply, under any circumstances, that the information herein is correct as of any time subsequent to the date hereof.

—————————————

**All capitalized terms not defined in this Disclosure Statement shall have the meanings ascribed thereto in the Plan.**

—————————————

The information contained in this Disclosure Statement relating to the history, business and operations of the Debtor is extracted from information contained in the Debtor's books and records and documents filed with the Bankruptcy Court. The Debtor has used its best efforts to provide accurate information; however, it makes no representation that such information is free from error. The projected financial information and the liquidation analyses relating to the Debtor has been prepared by the Debtor and is included herein only for the purpose of evaluating the Plan. As to contested matters, none of the information contained herein is to be construed as admissions or stipulations, except as specifically stated herein.

I.
INTRODUCTION

On December 3, 2010 (the "*Petition Date*"), The Louisville Orchestra, Inc. filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("*Bankruptcy Code*") with the United States Bankruptcy Court for the Western District of Kentucky ("*Bankruptcy Court*"). On May 30 2011, the Debtor filed the Plan.

This Disclosure Statement describes the material terms of, and provides additional important information with respect to, the Plan. This Disclosure Statement has been prepared pursuant to Section 1125 of the Bankruptcy Code, which requires that the Debtor transmit the Plan, or a summary of the Plan, and a written disclosure statement containing "adequate information" to holders of Claims and Equity Interests entitled to vote on the Plan prior to the solicitation of their acceptances or rejections of the Plan. This Disclosure Statement has been prepared and is being transmitted only for the purpose of evaluating the Plan. The approval by the Bankruptcy Court of this Disclosure Statement, as containing adequate information to enable the holders of Claims as classified under the Plan to make an informed judgment to accept or reject the treatment accorded such Classes under the Plan, is currently set for hearing by the Bankruptcy Court on _____ __, 2011, concurrently with the hearing on the confirmation of the Plan.

SUBSEQUENT APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT ON _____ __, 2011 DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE TRANSACTIONS CONTEMPLATED THEREBY.

The Debtor urges all parties-in-interest to read this Disclosure Statement and the Plan carefully and in their entirety. This Disclosure Statement does not include a description of each and every term of the Plan. Accordingly, the description of the Plan set forth herein is qualified by the entirety of the Plan, which is incorporated by reference into this Disclosure Statement. In the event that there is any inconsistency between the terms of the Plan and the description thereof contained in this Disclosure Statement, the terms of the Plan shall govern and control.

2

## A. Preliminary Statement

In pursuit of maximizing values for creditors and consensually confirming the Plan as expeditiously as possible, the Debtor has engaged in an exhaustive review of its business and a thorough exploration of potential reorganization scenarios. After examining all aspects of its business, it became apparent that the Debtor's creditors would be best served by proposing and confirming a Plan of Reorganization.

Soon after the commencement of this case, the Debtor determined that the going forward value to its creditors of its operations exceeds the liquidation value of its assets. The Debtor and certain of its creditor constituents (i.e., JPMorgan Chase Bank, NA ("Chase"), Fifth Third Bank ("FTB") and the Kentucky Center ("TKC")) commenced negotiation of a restructuring of its debt in a manner that would maximize the return of all holders of Claims based on the projected cash flow over the next five years. These negotiations resulted in a reduction and satisfaction of the Debtor's indebtedness to Chase and FTB to a level that could be accomplished while providing a meaningful return to holders of Allowed General Unsecured Claims. The Debtor projects that its cash flow through the end of fiscal year 2016 will be sufficient to provide for satisfaction of the Chase and FTB indebtedness and distributions on account of unsecured claims, and that such payments will provide the optimal return to holders of all Allowed Claims.

## B. Description of the Debtor's Business

The Debtor is a Kentucky nonprofit corporation with its principal place of business in Louisville, Kentucky. The Debtor operates a symphony orchestra offering a wide variety of concert series and performances throughout both Kentucky and Southern Indiana.

## C. The Debtor and the Filing of the Plan

Confirmation of the Plan will result in, among other things, the partial satisfaction and restructuring of the Debtor' secured debt owing to Chase, FTB, TKC and FFA, and a distribution of 50% on account of the Debtor's general unsecured creditors.

The Debtor believes that the Plan represents the best restructuring option available to the Debtor and its creditors, and anticipates that Chase, FTB, TKC and FFA will support the confirmation of the Plan. Any alternative, including any of which would force the Debtor to remain in Chapter 11 for an extended period of time or to liquidate its assets, would seriously damage the value of the Debtor' business and could result in substantially lower recoveries for creditors. Accordingly, the Debtor urges you to accept the Plan.

A copy of the order entered by the Bankruptcy Court on _____, 2011 (the "*Scheduling Order*") setting the date of the Disclosure Statement and Confirmation

Hearing and the dates fixed for (a) submitting Ballots on the Plan, and (b) filing and serving objections to and the hearing on confirmation of the Plan is also also attached to this Disclosure Statement as **Exhibit 2**. In addition, detailed voting instructions accompany each Ballot. Each holder of a Claim should read the Disclosure Statement, the Plan, the Scheduling Order, the Notice of the Confirmation Hearing and the instructions accompanying the Ballots in their entirety before voting on the Plan. These documents contain, among other things, important information concerning the classification of Claims for voting purposes and the tabulation of votes.

**D.    Notice to Holders of Claims Entitled to Vote**

This Disclosure Statement is being sent to holders of Claims in all Classes. Under the Bankruptcy Code, only those classes of Claims that are impaired are entitled to vote to accept or reject the Plan. Because Claims in Classes 1, 2 and 4 are unimpaired, the holders thereof are conclusively presumed to have accepted the Plan in respect of such Claims. HOLDERS OF CLAIMS IN CLASS 1 ARE NOT ENTITLED, THEREFORE, TO VOTE TO ACCEPT OR REJECT THE PLAN.

Claims in Classes 3, 5, 6, 7, 8, 9 and 10 (collectively, the "*Voting Classes*") are impaired under the Plan. Accordingly, they are entitled to vote to accept or reject the Plan. The purpose of this Disclosure Statement is to provide the holders of Claims in these Classes with adequate information to enable them to make a reasonably informed decision with respect to the Plan before (i) filing a response or objection to the Plan and/or (ii) voting to accept or reject the Plan.

See section IV entitled "*Summary of the Plan*" and section X entitled "*Voting Procedures and Requirements.*"

The Debtor intends to seek confirmation of the Plan pursuant to the so-called "cramdown" mechanism available under Section 1129(b) of the Bankruptcy Code if one or more of the Voting Classes votes to reject the Plan. Section 1129(b) of the Bankruptcy Code permits the confirmation of a plan of reorganization notwithstanding the nonacceptance of such plan of reorganization by one or more impaired classes of claims or interests. Under that section, a plan of reorganization may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to the nonaccepting class. In the event that any Class fails to accept the Plan by the requisite majorities required under Section 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, the Debtor will move the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code without amendment or modification. See section XI entitled "*Confirmation and Consummation of the Plan.*"

The Bankruptcy Court's approval of this Disclosure Statement as containing adequate information to enable holders of claims to make an informed judgment concerning acceptance or rejection of the Plan is scheduled for hearing on _____, 2011, concurrently with the hearing on the confirmation of the Plan. **IN THE EVENT**

**THAT THIS DISCLOSURE STATEMENT IS SO APPROVED, THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.**

**YOU ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR REJECT THE PLAN.**

**THIS DISCLOSURE STATEMENT AND ITS EXHIBITS ARE THE ONLY DOCUMENTS TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING THE PLAN.** No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized by the Bankruptcy Court or the Debtor to use or disclose any information concerning the Debtor other than the information contained herein. Other than as explicitly set forth in this Disclosure Statement, holders of Claims should not rely upon any information relating to the Debtor, their estates, the value of their assets, the nature of their liabilities or creditors' Claims.

All financial information contained in this Disclosure Statement has been provided by the Debtor. **MUCH OF THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF A CERTIFIED AUDIT**. This Disclosure Statement is accurate to the best of the Debtor's knowledge, information and belief. The Debtor, however, is unable to warrant or represent that the information contained herein is without inaccuracies.

This Disclosure Statement contains information supplementary to the Plan and is not intended to supplant or substitute for the Plan itself. **THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE SPECIFIC AND DETAILED INFORMATION SET FORTH IN THE PLAN**. Any perceived inconsistencies between the information contained in this Disclosure Statement and the terms of the Plan or any exhibit thereto are to be resolved in favor of the actual terms of the Plan as set forth therein.

**E.      Disclosure Statement Enclosures**

Accompanying this Disclosure Statement are copies of the following:

|  |  |
|---|---|
| Exhibit 1: | Plan of Reorganization |
| Exhibit 2: | Scheduling Order |
| Exhibit 3: | Balance Sheet |
| Exhibit 4: | Projected Cash Flow Statement |
| Exhibit 5: | Liquidation Analysis |

**F.    Voting Procedures, Balloting and Voting Deadlines**

If you are the holder of an impaired Claim, a Ballot which corresponds to such Claim held is enclosed for voting on the Plan.  Please complete all of the information on the enclosed Ballot and indicate your acceptance or rejection of the Plan and sign the Ballot where indicated only after you have carefully reviewed this Disclosure Statement and the Plan.  Please return and sign the original Ballot (copies will not be accepted) as described below.  If a holder holds Claims in more than one class and is entitled to vote such Claims, separate Ballots must be used for each class of Claims.  FOR YOUR BALLOT TO BE COUNTED, THE ORIGINAL BALLOT MUST BE COMPLETED AS SET FORTH ABOVE AND RECEIVED EITHER BY HAND, BY MAIL OR BY OVERNIGHT DELIVERY SERVICE BY DEBTOR'S COUNSEL (*THE "BALLOTING AGENT*") AT THE FOLLOWING ADDRESS, NO LATER THAN 4:00 P.M. (EASTERN STANDARD TIME) ON _____, 2011 (THE "*VOTING DEADLINE*"):

> Valenti, Hanley & Robinson PLLC
> 401 West Main Street, Ste. 1950
> Louisville, Kentucky 40202
> Attn: Mark Robinson

ANY EXECUTED BALLOT TIMELY RECEIVED BY THE BALLOTING AGENT WHICH DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN.  See section X entitled "*Voting Procedures and Requirements.*"  If you have any questions regarding the procedures for voting your Claim, please contact Debtor's counsel at the address listed on the front of this Disclosure Statement.

Any person entitled to vote to accept or reject the Plan, may change its vote before the Voting Deadline by casting another Ballot so that it is received on or before such deadline.  In such case, the last vote received by the Balloting Agent prior to the Voting Deadline shall be deemed the effective Ballot and all other Ballots shall be disregarded.  Persons desiring to change their votes after the Voting Deadline may do so if they satisfy the conditions of Rule 3018(a) of the Bankruptcy Rules by filing a motion with the Bankruptcy Court with sufficient notice so that it can be heard at or before the Disclosure Statement and Confirmation Hearing.

Any Claim in an impaired Class as to which an objection is pending or which is scheduled by the Debtor as unliquidated, disputed or contingent is not entitled to vote on the Plan unless the holder of such Claim has obtained an order of the Bankruptcy Court temporarily allowing the Claim for the purpose of voting on the Plan.  See section X entitled "*Voting Procedures and Requirements -- Parties in Interest Entitled to Vote.*"

Entities not voting to accept the Plan shall be bound by the Plan if it is accepted by holders of Claims in the required number and dollar amount as described in section

X entitled "*Voting Procedures and Requirements*" and confirmed by order of the Bankruptcy Court.  See section XI entitled "*Confirmation and Consummation of the Plan.*"

## G.  Hearing on and Objections to Confirmation

### 1.  The Confirmation Hearing

The Bankruptcy Court has scheduled a hearing to consider the adequacy of this Disclosure Statement and confirmation of the Plan (the "*Disclosure Statement and Confirmation Hearing*") beginning on _____ at __:00 a.m. Eastern Standard Time. The Confirmation Hearing is scheduled to take place before the Honorable David T. Stosberg, United States Bankruptcy Court for the Western District of Kentucky, Western Division, 601 West Broadway, Louisville, Kentucky.

### 2.  Date Set for Filing Objections to Confirmation

The Scheduling Order requires that objections, if any, to the adequacy of this Disclosure Statement and/or confirmation of the Plan be served and filed on or before _____, 2011 in the manner described under section XI entitled "*Confirmation and Consummation of the Plan.*" The failure of any person to properly and timely file and serve objections may prevent such person from objecting to the adequacy of this Disclosure Statement or to confirmation of the Plan.  The Disclosure Statement and Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment date made at the Disclosure Statement and Confirmation Hearing or at any subsequently adjourned Disclosure Statement and Confirmation Hearing.

II.
GENERAL INFORMATION

## A.  Overview of the Debtor' Present Status

As of the Petition Date, the Debtor was engaged in the operation of a symphony orchestra offering a wide variety of concert series and performances throughout both Kentucky and Southern Indiana.  Since the Petition Date, the Debtor has completed all performances that had been scheduled.  The Debtor has not engaged in any other business post petition other than filing the Plan and this Disclosure Statement.   The Debtor employed __ Musicians post petition pursuant to the CBA which expires by its terms on May 31, 2011.  The Debtor also employed, and continues to employ, a Chief Executive Officer and a Chief Financial Officer.

 The Debtor is ultimately controlled and guided by its Board of Directors. The Executive Management Team of the Debtor is authorized to handle the day-to-day operations of the Debtor during the Reorganization Case.

**B.    Existing Executive Officers of the Debtor**

The following table sets forth the name and position of each of the current executive officers of the Debtor:

| Name | Position |
|------|----------|
| Robert Birman | Chief Executive Officer |
| Tonya McSorley | Chief Financial Officer |

**C.    History of the Debtor**

The Debtor was established in 1937 and will celebrate its 75th anniversary in 2012. Originally, the Debtor operated as a "part time orchestra" until 1981. During that time, it received critical acclaim, including feature profiles in Time, Newsweek, The New Yorker and in major American newspapers across the country. It also received invitations to perform at the White House, Carnegie Hall and The Kennedy Center.

In 1981, the musicians employed by the Debtor (the "Musicians") gained salaried status through the negotiation of a collective bargaining agreement.[1] The Musicians are represented by the Louisville Federation of Musicians, Local 11-637, American Federation of Musicians (the "Union").

At different times during its history (e.g., in 1997, 2003 and 2006), the Debtor's cost of operations significantly exceeded its revenues and regular donations, placing the organization in "financial crisis." On each of those occasions, the Debtor was able to survive and remain in operation through accumulation of large amounts of debt ($1.3 million in 2003), unanticipated bequests and/or extraordinary intervention by one or more donors.

In 2006, the Debtor was able to survive, in part, based on significant pay concessions made by the Musicians and their Union and extraordinary, multi-year fundraising by the board of directors and staff. This agreement was memorialized in the current collective bargaining agreement (the "CBA") that expires by its terms on May 31, 2011. The Debtor and the Union have been engaged in ongoing negotiations for a new CBA since July 2010 but have, as of yet, been unable to reach an agreement.

Most recently, in late 2010, the Debtor exhausted its cash reserves and was unable to continue to fund operations, leading to the filing this bankruptcy proceeding. Upon filing its bankruptcy petition, the Debtor requested the Bankruptcy Court to grant interim relief from the payment obligations under the CBA. The Bankruptcy Court denied this motion and encouraged the Debtor to find a way to obtain the necessary

---

[1] The Musicians had organized into a union many years prior to that, but were compensated on a pay "per service" [i.e. rehearsal or concert] employment model.

funds to complete the current season. The Debtor followed the Court's direction and was able to obtain the sufficient interim funding (primarily by accepting advances upon future years' of community endowment support) and has now completed the current season.

**D.** **Sources of Funding**

Historically, the Debtor has relied on ticket and subscription revenues, individual donations, corporate donations and sponsorships, distributions from independent community endowments, grants from FFA and loans as the sources for funding operations.

1.  <u>Ticket and Subscription Revenues</u>. Prior to each season, the Debtor promotes and sells subscription packages and tickets for individual performances to the public. Historically, the Debtors annual revenues from this activity range from approximately $950,000 to $1,660,000 and constitute between 16% and 24% of the Debtor's annual operating budget.

2.  <u>Corporate Donations and Sponsorships</u>. The Debtor continually solicits donations and sponsorships from businesses/corporations in the Louisville community. Historically, the Debtors annual revenues from this activity range from approximately $760,000 to $1,139,000 and constitute between 12% and 17% of the Debtor's annual operating budget.

3.  <u>Endowments.</u> The Debtor has traditionally received distributions from two community based endowments: The Louisville Orchestra Foundation, Inc. ("LOF") and the Louisville Orchestra, Inc. Endowment Fund Trust (the "Trust").

LOF is a nonprofit corporation incorporated in May 2004 by the Debtor and the Community Foundation of Louisville, Inc. ("CFL") LOF's board of directors is nominated by CFL and elected by the Debtor. CFL currently has assets in the approximate amount of $8,300,000. LOF's Articles and By Laws provide guidelines and restrictions which limit the timing and amount of distributions can be authorized by LOF's board.

The Trust was originally established in 1967 and its corpus is currently in the approximate amount of $1,300,000. The Trust's board of directors is appointed by the Debtor and the Trust Agreement provides and restricts the amount of distributions that can be authorized by its board.

4.  <u>FFA</u>. FFA is a not-for-profit organization that solicits donations for, and makes grants to, local arts organizations, including the Debtor.

5.  <u>Bank Debt</u>. Over the course of its existence, the Debtor has, from time to time, borrowed funds from local banking institutions to help fund operations, As of the Petition Date, the Debtor had outstanding loans with FTB and Chase.

9

(a)    FTB.  In March 2010, the Debtor obtained a loan from FTB in the amount of $400,000 which was guaranteed by a patron of the Debtor.  As of the petition date, the Debtor had drawn and was indebted to FTB in the principal amount of $155,000.  During the course of this proceeding, FTB, the guarantor and the Debtor have reached an agreement whereby the guarantor will make a donation to the Debtor that will in turn be used to satisfy substantially all of the Debtor's indebtedness to FTB.

(b)    Chase.  In January 2008, the Debtor obtained a line of credit from Chase in the amount of $350,000.  As of the Petition Date, the Debtor was indebted to Chase in the full principal amount.  The Debtor has reached an agreement with Chase for a forgiveness of approximately 50% of that indebtedness, with a cash payment for the balance as provided in the Plan.

III.
THE REORGANIZATION CASE

## A.    Commencement of the Reorganization Case

The Debtor filed for Chapter 11 protection on December 3, 2010.

After filing for Chapter 11 protection, the Debtor determined in its business judgment that it was necessary to ask the Court to grant it relief from the CBA  (i.e., relieving the Debtor from its obligation to employ and pay compensation to the Musicians for a period of months.)  The Bankruptcy Court ultimately denied that request and encouraged the Debtor to renew its efforts to obtain donations to enable it to complete the current season.  Since that time, the Debtor obtained additional funds to enable it to complete the season and has been in ongoing negotiations with the Musicians for a new CBA to begin after the existing CBA expires on May 31, 2011.  To date, such an agreement has not been reached but negotiations are ongoing.

The Debtor is currently operating, and the Reorganized Debtor will, upon and after the Effective Date, continue in operation.

The Debtor believes that all of Chase's, FTB's, FFA's and TKC's liens on the Debtor' assets are valid, perfected, enforceable and first priority.  Moreover, as described in Section VII hereof entitled "*Liquidation Valuation*", in a liquidation of the Debtor's assets, the Debtor believes that no proceeds from the liquidation of its assets would be available for distributions on account of unsecured claims and thus the holders of all Allowed Claims would receive substantially less than the distribution to be accorded to such Claim holders under the Plan.

## B.    No Statutory Creditors' Committee

No statutory committee of Creditors has been appointed in this Case

**C.      Purpose of the Reorganization Case**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  The commencement of a Chapter 11 case creates an "estate" comprised of all the legal and equitable interests of the debtor.  Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may remain in possession of its property and continue to operate its business as a "debtor in possession."  Formulation of a plan of reorganization is the principal goal of a Chapter 11 case.  The plan is the vehicle for satisfying the holders of claims against a debtor.  The Debtor anticipates that the structure of the Plan will enable the Debtor to provide a meaningful recovery to holders of Allowed Claims in the manner and to the extent provided in the Plan while continuing to provide symphonic music to the public.

**D.      Proceedings in the Reorganization Cases**

1.      <u>Operational Issues After the Petition Date</u>.  On the Petition Date, the Debtor sought and subsequently obtained orders from the Bankruptcy Court designed to minimize disruptions of business operations and to facilitate their reorganization.

2.      <u>Employee-Related Matters</u>.  The Debtor considers its employees to be one of its most valuable assets.  Continued employee cooperation and support is important to a successful reorganization.  Accordingly, the Debtor has effected certain actions in the Bankruptcy Court to maintain employee support and minimize any salary, wage and employee benefit disruptions.  These actions include obtaining an order of the Bankruptcy Court authorizing the Debtor to (i) pay employee salaries, reimbursable employee expenses and certain accrued and unpaid employee benefits incurred and payable prior to the Petition Date; (ii) make payments to third parties to whom amounts are owed for prepetition deductions from employee paychecks for taxes, savings bond purchases, alimony, garnishments, support payments, savings programs and other similar programs, and (iii) make certain payments and contributions with respect to Debtor' health, disability and savings plans.

3.      <u>Exclusivity</u>.  Pursuant to Section 1121 of the Bankruptcy Code, a Chapter 11 debtor has an exclusive right to file a plan of reorganization for the first 120 days of a bankruptcy case.  The Debtor sought and was granted, pursuant to an Order of the Court issued on March 22, 2011, an extension of the exclusivity period through May 31, 2011.

4.      <u>Unsecured Creditors' Committee</u>.  No Unsecured Creditors' Committee has been appointed.

5.      <u>Bar Date</u>.  On May 27, 2011, the Debtor filed its Motion to Establish Claims Bar Date.

6.     <u>Other First Day Orders</u>. In addition to the Debtor' motions regarding employee matters and post-petition financing, on the Petition Date, the Debtor filed Emergency Motions for authorization to maintain prepetition bank accounts, hire professionals and take other actions to continue to operate the Debtor' businesses during the pendency of their bankruptcy proceedings. The Debtor also requested that the Bankruptcy Court grant emergency hearings on these and other matters on the Petition Date.  The Bankruptcy Court upheld the Debtor's request for emergency hearings and granted relief (including interim relief) on these various motions. The Debtor also received approval from the Bankruptcy Court to maintain the Debtor's existing bank accounts and cash management system.

7.     <u>Negotiations with Union</u>.  Since the Petition Date, the Debtor has been involved in ongoing negotiations with the Union to reach an agreement for a new CBA. To date, no agreement has been reached.

IV.
SUMMARY OF THE PLAN

**THE FOLLOWING IS A SUMMARY OF THE MATTERS ANTICIPATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH CONFIRMATION OF THE PLAN.  THIS SUMMARY ONLY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT INTENDED TO BE A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN ANNEXED TO THIS DISCLOSURE STATEMENT AS EXHIBIT 1 AND ALL EXHIBITS THERETO.**

The Plan is the product of diligent efforts by the Debtor, Chase, FTB and TKC to formulate a consensual plan of reorganization in accordance with the mandates of the Bankruptcy Code, other applicable law and the contractual agreements among creditors.  The Plan memorializes the agreements reached with Chase, FTB, FFA and TKC and is the culmination of such efforts.  The Plan is intended to maximize distributions payable to holders of Claims and is designed to allow holders of Claims to receive distributions in excess of those which would be available if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

**A.    Overview of the Plan**

According to the Debtor's projections, the Debtor will generate sufficient cash flow, through donations, grants and ticket sales, to fund the payments provided for by the Plan.  The Debtor projects that all Allowed Claims will be satisfied in the manner and to the extent provided in the Plan within five years from the Confirmation of the Plan.  In addition to all liquidated Claims, the Reorganized Debtor will also proceed to resolve any unliquidated Claims.

Section 1122 of the Bankruptcy Code requires that a plan of reorganization classify the claims of a debtor's creditors. The Bankruptcy Code also provides that, except for certain claims classified for administrative convenience, a plan of reorganization may place a claim of a creditor in a particular class only if such claim or interest is substantially similar to the other claims of such class. The Bankruptcy Code also requires that a plan of reorganization provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of its claim or interest.

**B.     Summary of Treatment of Claims and Equity Interests**

**THIS SECTION PROVIDES A SUMMARY OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN AND TO THE EXHIBITS ATTACHED THERETO.**

**THE REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE REPRESENTATIONS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.**

**THE PLAN AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CLAIMANTS AND EQUITY INTEREST HOLDERS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST THE DEBTOR, AND OTHER PARTIES IN INTEREST.**

1.     <u>Class 1:Cost of Administration Claims and Priority Claims</u>

The Plan provides that each holder of an Allowed Cost of Administration Claim shall be paid by the  Reorganized Debtor on account of such Allowed Cost of Administration Claim (i) the full amount of such Allowed Cost of Administration Claim in Cash, without interest, on the later of (a) the Effective Date or as soon thereafter as is practicable, or (b) the date on which such Allowed Cost of Administration Claim becomes due and payable pursuant to the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating thereto, or any applicable Final Order or (ii) in such amount on such other date and upon such other terms as may be contained in a Final Order or as agreed upon between the holder of such Allowed Cost of Administration Claim and the Reorganized Debtor.  Additionally, the Plan provides for the payment in full, in Cash, of all Allowed Priority Tax Claims over

a period not to exceed six years in equal monthly installments with interest at the applicable statutory rate, or at the rate set by the Court.

2.      Class 2: Priority Pension Claim

On the Effective Date, the Reorganized Debtor shall pay to American Federation of Musicians & Employers Pension Fund the sum of $43,486.11  in full and final satisfaction of the Debtor's remaining obligations under the CBA for pension benefits as provided by 11 U.S.C. 1113(f).

3.      Class 3: Allowed Secured Claim of Chase

On the Effective Date, the Reorganized Debtor shall pay to Chase the sum of $175,000 in cash in full and final satisfaction of its secured claim of $270,000 (and its unsecured deficiency claim of approximately $80,000).

4.      Class 4: Allowed Secured Claim of FTB.

Upon the entry of a Final Order approving the FTB Settlement and the payment by Brown to the Debtor of the FTB Settlement Amount, the Debtor shall pay to FTB in cash the Settlement Amount in full and final satisfaction of the Allowed FTB Secured Claim.

5.      Class 5: Unsecured Deficiency Claim of Chase

No distribution will be made on account of the Unsecured Deficiency Claim of Chase.

6.      Class 6: Unsecured Deficiency Claim of FTB

Upon the entry of a Final Order approving the FTB Settlement and the payment by Brown to the Debtor of the FTB Settlement Amount, the Debtor shall pay to FTB in cash the Settlement Amount in partial satisfaction of the Unsecured Deficiency Claim of FTB.  The balance of FTB's deficiency claim shall be treated as a Class 9 General Unsecured Claim in the amount of $10,000.

7.      Class 7: Unsecured Lease Assumption Cure Claim of TKC

From and after the Effective Date, the Debtor shall pay the sum of $2000 per month for a period of 12 months in full and final satisfaction of the TKC Lease Assumption Cure Claim.

8.      Class 8: Secured Claims of TKS and FFA

Monthly payments shall be made by the Debtor pursuant to the loan documents between the parties, except that any monthly payments currently in arrears shall be made in consecutive monthly payments commencing the month following the last monthly payment currently provided for in said documents. TKC and FFA shall further retain their lien on the subject collateral.

9.       Class 9: General Unsecured Claims

After the Effective Date, each holder of an Allowed General Unsecured Claim shall receive an aggregate amount equal to 50% of their claim to be paid quarterly over a period of 3 years without interest.

10.       Class 10: Convenience Unsecured Claims.

Each holder of an Allowed Convenience Unsecured Claim (general unsecured claims in an amount less the $2000.00) shall receive a single payment in an amount equal to 50% of their claim on or before 90 days from the Effective Date.

## C.     Classes of Claims

Cost of Administration Claims and Allowed Priority Tax Claims are not classified as permitted by Section 1123(a)(1) of the Bankruptcy Code.

Claims are classified for all purposes, including voting (if applicable), confirmation and distribution pursuant to the Plan as follows:

| Classification | Estimated Maximum Amount of Claims | Treatment | Amount Recovery as a % of Claim |
|---|---|---|---|
| Unclassified Cost of Administration Claims | $80,000 | Not Classified. Paid in full on the Effective Date or when Allowed or as otherwise agreed. | 100% |
| Unclassified Priority Tax Claims | $0[1] | Not Impaired. Paid in deferred Cash payments over 6 years at the non-default statutory rate applicable to the Priority Tax Claim in question, or such other rates as may be ordered by the Court in accordance with Section 1129(a)(9)(c) of the Bankruptcy Code; provided, however, that the Debtor may elect to pay Allowed Priority Tax Claims less than $1,000 in one lump sum. | 100% |
| Class 1 Priority Non-Tax Claims | $53,000 | Not Impaired. Paid (i) in full in Cash on the Effective Date or (ii) as otherwise agreed. | 100% |
| Class 2 Priority Pension Claim | $43,486.11 | Not Impaired. Paid in full in Cash on the Effective Date. | 100% |
| Class 3 Secured Claim of Chase | $270,000 | Impaired. Payment of $175,000 on Effective Date. | 65% |
| Class 4 Secured Claim of FTB | $107,000 | Not Impaired. Receive cash payment in full upon receipt of Settlement Payment from Brown by Debtor. | 100% |
| Class 5 Unsecured Deficiency Claim of Chase | $80,000 | Impaired. No distribution will be made on account of this claim. | 0% |
| Class 6 Unsecured Deficiency Claim of FTB | $53,000 | Balance of the FTB Settlement Payment and an allowed Class 8 general unsecured claim in the amount of $10,000 | 90% |
| Class 7 Unsecured Lease Assumption Cure Claim of TKC | $48,000 | Debtor will pay a total of $24,000 at the rate of $2000 per month for 12 months. | 50% |
| Class 8 Secured Claims of TKC and FFA | $47,698.82 | The delinquent monthly payments will be made beginning after the last scheduled contractual payment. | 100% |
| Class 9 Allowed General Unsecured Claims | Approximately $185,000 | Impaired. Paid a total amount equal to __% of each such claim over a period of __ in quarterly installments without interest.. | 50% |
| Class 10 Convenience Unsecured Claims | Approximately $15,000 | Impaired. Unsecured Claims in the amount of $1,000 or less will receive a one time payment equal to 50% of their claim within 90 days after the Effective Date. | 50% |

## D. Board of Directors and Executive Officers of the Reorganized Debtor

All members of the Board of Directors and executive officers of the Debtor will retain their positions on or about the Effective Date.

---

[1] The Debtor believe that no tax Claims have been filed or exist. To the extent that there are Allowed Priority Tax Claims, they will be paid in full over six years from the date of assessment.

**E.     Business of the Reorganized Debtor**

On the Effective Date, the Reorganized Debtor shall exist as a corporate entity organized under the laws of the Commonwealth of Kentucky.  The Reorganized Debtor will engage in the business of operating a symphony orchestra.

**F.     Releases**

The Plan and the distributions made under or pursuant to the Plan will be in full and final satisfaction, settlement and release as against the Debtor and the Debtor's officers, directors, shareholders, agents and counsel (collectively, "*Exculpated Persons*") of any debt or Cause of Action relating to the Debtor or any such Entity's involvement therewith, as applicable, that arose before the Effective Date and any debt of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, and all Claims and Interests of any nature, including any interest accrued thereon, on and after the Petition Date, whether or not:  (i) a proof of Claim or Interest based on such debt, obligation or Interest was filed or deemed filed under Sections 501 or 1111(a) of the Bankruptcy Code; (ii) such Claim or Interest is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such Claim or Interest has accepted the Plan of Reorganization.

On the Effective Date, the Debtor, the Reorganized Debtor and all holders of Claims and Interests do, and are hereby deemed to, release unconditionally, as applicable, the officers, directors, shareholders, employees, consultants, financial advisors, attorneys, accountants and other agents, members and representatives and each of their respective successors, executors, administrators, heirs and assigns of the Debtor, Chase and the Committee (such entities referred to as the "*Releasees*") from any and all Claims, obligations, suits, judgments, damages, rights, Causes of Action or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date, except fraud or intentional or willful misconduct as finally determined by the Bankruptcy Court, and the Confirmation Order will permanently enjoin the prosecution by any Entity, whether directly, derivatively or otherwise, of any Claim, debt, right, Cause of Action or liability that was or could have been asserted against the Releasees, except as otherwise specifically provided herein.  Notwithstanding the foregoing, the Debtor' Releasees shall not include any of the Debtor's officers, directors, shareholders, employees, consultants, financial advisors, attorneys, accountants or agents that were not in such position(s) on the Petition Date.

On the Effective Date, the Debtor, the Reorganized Debtor and all holders of Claims and Interests shall release, and shall be deemed to have released, unconditionally, all rights, claims, liabilities or Causes of Action against any holder of an Allowed General Unsecured Claim evidenced by a promissory note executed by any of the Debtor prior to the Petition Date as consideration or partial consideration for the purchase of one or more practice sites owned by the Debtor as of the Petition Date, to

extent such claims, rights, liabilities or Causes of Action arise under section 548 of the Bankruptcy Code or applicable state fraudulent conveyance or transfer statutes (as made applicable to the Reorganization Cases under Section 544 of the Bankruptcy Code) relating to such purchases or the execution of such promissory notes.

Notwithstanding anything contained herein to the contrary, the Plan will not absolve or otherwise protect the Disbursing Agent from any liability it may have arising from any intentional acts of wrongdoing by the Disbursing Agent in connection with its duties under the Disbursing Agent Agreement.

## G.    Term of Injunctions or Stays

Except as otherwise expressly provided in the Plan, the Confirmation Order will provide, among other things, that all Persons who have held, hold or may hold Claims are permanently enjoined from and after the Effective Date from: (i) commencing or continuing in any manner any action or other proceedings of any kind against any Exculpated Person based upon, relating to, arising out of, or in any way connected with any such Claim or Equity Interest; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Exculpated Person or the property of any Exculpated Person with respect to any such Claim; (iii) creating, perfecting or enforcing any encumbrance of any kind against any Exculpated Person or against the property of any Exculpated Person with respect to any such Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due any Exculpated Person or against the property of any Exculpated Person with respect to any such Claim; (v) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claim as to which such Person shall be deemed to have covenanted not to sue; and (vi) commencing any action, or collecting or recovering by any manner or means any judgment, award, decree or order, against the immediate or any mediate transferee of any property distributed pursuant to this Plan of Reorganization based upon a claim that the transferor's receipt of such property constituted a fraudulent conveyance, preference, or violation of a bulk sales law, or based upon any other claim that receipt and or distribution of property by transfer pursuant to this Plan of Reorganization is wrongful.

V.
SUMMARY OF OPERATIONS

A copy of the Debtor's current balance sheet is attached hereto as **Exhibit 3**, and hereby incorporated herein as though fully set forth.

VI.
PROJECTIONS

## A.    Projected Cash Flow Statement

The Bankruptcy Code conditions confirmation of the Plan on, among other things, a finding by the Bankruptcy Court that confirmation is not likely to be followed by

the liquidation or the need for further financial reorganization of the Reorganized Debtor. See section XI entitled "*Confirmation and Consummation of the Plan - Conditions to Confirmation of the Plan - Feasibility.*" In this connection, the Debtor has developed monthly cash flow statement projections for the period commencing on the Effective Date (estimated to be August 15, 2011) and ending on May 3, 2012, giving effect to the adjustments necessary to reflect the confirmation and consummation of the Plan which is assumed to occur as of the end of fiscal year ending August 15, 2014 (the "*Projections*").  Copies of the Projections are attached hereto as **Exhibit 4**.

The Projections should be read in conjunction with the assumptions, qualifications, the footnotes to tables containing the Projections contained herein, and the selected financial data appearing in section V entitled "*Summary of Operations.*"

THE PROJECTIONS WERE NOT PREPARED WITH A VIEW TO COMPLYING WITH THE GUIDELINES FOR PROSPECTIVE FINANCIAL STATEMENTS PUBLISHED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.

THE REORGANIZED DEBTOR DOES NOT INTEND, AND DISCLAIMS ANY OBLIGATION TO:  (A) FURNISH UPDATED BUSINESS PLANS OR PROJECTIONS TO CREDITORS PRIOR TO THE EFFECTIVE DATE OR ANY OTHER ENTITY AFTER THE EFFECTIVE DATE, OR (B) OTHERWISE MAKE SUCH UPDATED INFORMATION PUBLICLY AVAILABLE.

THE PROJECTIONS PROVIDED IN THIS DISCLOSURE STATEMENT HAVE BEEN PREPARED BY THE DEBTOR.  THESE PROJECTIONS, ALTHOUGH PRESENTED WITH NUMERICAL SPECIFICITY, ARE BASED UPON A SERIES OF ESTIMATES AND ASSUMPTIONS WHICH, ALTHOUGH CONSIDERED REASONABLE BY THE DEBTOR, MAY NOT BE REALIZED AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE CONTROL OF THE DEBTOR.  NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THESE FINANCIAL PROJECTIONS OR TO THE CAPACITY OF THE REORGANIZED DEBTOR TO ACHIEVE THE PROJECTED RESULTS.  SOME ASSUMPTIONS INEVITABLY WILL NOT MATERIALIZE, AND EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THESE PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED OR MAY BE UNANTICIPATED AND, ACCORDINGLY, MAY AFFECT FINANCIAL RESULTS IN A MATERIAL AND POSSIBLY ADVERSE MANNER.  THE PROJECTIONS, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.  IT IS URGED THAT ALL OF THE ASSUMPTIONS BE EXAMINED CAREFULLY IN EVALUATING THE PLAN.

THE FOREGOING ASSUMPTIONS AND RESULTANT COMPUTATIONS WERE MADE SOLELY FOR PURPOSES OF PREPARING THE PROJECTIONS. ALTHOUGH THE DEBTOR EXPECTS TO UTILIZE A CONSISTENT METHODOLOGY,

THE CHANGES BETWEEN THE AMOUNTS OF ANY OR ALL OF THE FOREGOING ITEMS AS ASSUMED IN THE PROJECTIONS AND THE ACTUAL AMOUNTS THEREOF AS OF THE CONSUMMATION DATE MAY BE MATERIAL.

VII.
LIQUIDATION VALUATION

## A.    Estimated Liquidation Value of Assets

As a condition to confirmation of the Plan, Section 1129(a)(7)(A)(ii) of the Bankruptcy Code requires that each holder of a Claim in an impaired Class of Claims that has not voted to accept the Plan must be distributed on account of such Claim or Equity Interest consideration of a value not less than that which it would receive in the event that the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.  The information contained in **Exhibit 5** attached hereto (the "*Liquidation Analysis*") provides a summary of the liquidation values of the Debtor's properties and interests in property, assuming a Chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the properties and interests in property comprising the estates of the Debtor.  Based on the Liquidation Analysis, the Debtor estimates that the aggregate value of the Debtor's assets in a Chapter 7 liquidation would be approximately $335,000

Underlying the Liquidation Analysis are a number of estimates and assumptions that are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtor.  Accordingly, the values reflected may not be realized if the Debtor were actually to be the subject of such a liquidation.

## B.    Impact of Liquidation

The Debtor has considered the impact of a conversion to Chapter 7 and compared the amounts holders of Allowed Claims would receive upon liquidation to the amounts they will receive under the Plan.  The following analysis concludes that each holder of an Allowed Claim, and the holders of Claims as a whole, would receive substantially less in liquidation than each will receive pursuant to the Plan.

As part of the Plan, unsecured creditors will receive an amount equal to 50% their claims.   Based on the valuation of the Debtor's assets set forth in the Liquidation Analysis, there likely would be **no** distribution made to holders of Allowed General Unsecured Claims.   This is because substantially all of the physical assets of the Debtor serve as collateral for the indebtedness owed to Chase, which indebtedness (in excess of $350,000, far exceeds the estimated liquidation value of the Debtor's physical assets ($207,000).  Any cash of the Debtor (currently $115,000) would be exhausted through payment of administrative expenses (currently approximately $150,000).

4.    Projected Plan Distribution.   Under the Plan, the overall distributions to holders of Allowed Claims is projected to be as set forth in the table in Section IV(C) above.

The net effect of the Plan, based on the foregoing analysis, is that holders of Allowed General Unsecured Claims in Class 9 will receive more than they could possibly receive in a Chapter 7 liquidation.

## C.     Conclusion

The numerous uncertainties associated with liquidation of the Debtor under Chapter 7 of the Bankruptcy Code make it impossible to predict with certainty the outcome of any Chapter 7 liquidation.  A Chapter 7 liquidation will likely result in significantly smaller distributions to holders of all Allowed Claims than those provided for in the Plan.

**THE DEBTOR BELIEVES THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS PREFERABLE TO CHAPTER 7 LIQUIDATION AS DESCRIBED HEREIN BECAUSE THE PLAN SHOULD PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN LIQUIDATION TO THE HOLDERS OF UNSECURED CLAIMS, WHO WOULD LIKELY RECEIVE LESS IN A CHAPTER 7 LIQUIDATION. IN ADDITION, OTHER ALTERNATIVES WOULD INVOLVE UNCERTAINTY AND SUBSTANTIAL ADMINISTRATIVE COSTS.**

VIII.
RISK FACTORS

## A.     Deviation from Projections

The Projections are based upon numerous assumptions concerning the anticipated future performance of the Reorganized Debtor.  For example, the Projections include assumptions concerning general economic conditions and the ability to increase profitability and control costs which may affect the actual financial results of the Reorganized Debtor.  Therefore, the actual results achieved throughout the periods covered by the Projections may vary from the projected results, which variations may be material and adverse.

## B.     Impact of Bankruptcy

There is a risk that the recent financial problems and the Chapter 11 filings could have severely impaired the Debtor' operations and its relationships with key vendors.

IX.
ALTERNATIVES TO CONFIRMATION
AND CONSUMMATION OF THE PLAN

The alternative to the Plan is the liquidation of the Debtor's assets in Chapter 11 or conversion to a liquidation case under Chapter 7.  The Debtor believes that the Plan

is the best alternative to maximize the recovery to holders of Allowed Claims, assuming confirmation and consummation of the Plan.

In formulating and developing the Plan, the Debtor has explored other alternatives and engaged in an extensive negotiation process involving different parties who hold disparate interests. The Debtor believes not only that the Plan fairly adjusts the rights of various Classes of Claims and enables creditors to realize the highest recoveries possible under the circumstances, but also that rejection of the Plan in favor of some theoretical alternative method of reconciling the Claims of the various Classes will require, at the very least, an extensive and time-consuming negotiation process and will not result in a better recovery for any Class.

The Debtor believes that confirmation of the Plan is preferable to any alternative mentioned above because the Plan maximizes the distributions to all Classes of Claims and any alternative to confirmation of the Plan will result in substantial delays in the distribution of any recoveries available under such alternative.

## X.
## VOTING PROCEDURES AND REQUIREMENTS

The following is a brief summary of the provisions of the Bankruptcy Code regarding acceptance and confirmation of a plan of reorganization. Holders of Claims are encouraged to review the relevant portions of the Bankruptcy Code and to consult their own attorneys.

In order for the Plan to be confirmed, the Bankruptcy Code requires the Bankruptcy Court to determine that the Plan complies with the requirements of Chapter 11 of the Bankruptcy Code. Among other things, the Bankruptcy Court must determine that the Plan has been proposed in good faith and not by any means forbidden by law.

Some specific requirements under the Bankruptcy Code for confirmation of the Plan are: (a) the Plan must be accepted by the requisite votes of Claim holders, except to the extent that confirmation despite dissent is available under Section 1129(b) of the Bankruptcy Code; and (b) the Plan must be in the "best interests" of all of the Debtor's creditors (i.e., creditors will receive at least as much pursuant to the Plan as they would receive in liquidation under Chapter 7 of the Bankruptcy Code).

To confirm a plan, the Bankruptcy Court must find that all of the above conditions are met, unless the applicable provisions of Section 1129(b) of the Bankruptcy Code are employed. Thus, even if all of the holders of Claims in the Voting Classes accept the Plan by the requisite number of votes, the Bankruptcy Court must make independent findings concerning whether the Plan conforms to the requirements of the Bankruptcy Code and whether the Plan is in the best interests of the holders of Claims before it may confirm the Plan. Each condition to confirmation of the Plan is more fully discussed below.

## A.  Parties in Interest Entitled to Vote

As noted elsewhere herein and in the Plan, only holders of Claims in Classes 3, 5, 6, 7, 8, 9 and 10 are entitled to vote on the Plan.  Holders of Claims in Classes 1, 2 and 4 are unimpaired and therefore are not entitled to vote on the Plan.

A holder of a Claim in Class Classes 3, 5, 6, 7, 8, 9 and 10 whose Claim is "impaired" under the Plan, is entitled to vote to accept or reject the Plan if (i) its Claim has been scheduled by the Debtor and such Claim is <u>not</u> scheduled as disputed, contingent or unliquidated, or (ii) it has filed a proof of claim on or before the Bar Date, pursuant to Section 502(a) of the Bankruptcy Code and Bankruptcy Rule 3003 and in accordance with the order of the Bankruptcy Court setting the Bar Date.

Any Claim in such Classes as to which an objection has been filed and has not been withdrawn or dismissed is not entitled to vote <u>unless</u> the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a) and upon application of the holder whose Claim has been objected to, temporarily allows the Claim in an amount that the Bankruptcy Court deems proper solely for the purpose of accepting or rejecting the Plan.

If more than one Ballot is received from any holder of an impaired Claim, the later-dated Ballot, if received on or before the Voting Deadline, shall be deemed to supersede the earlier dated Ballot.  The Balloting Agent will not accept Ballots by facsimile transmission.  Creditors must vote all of their claims within a particular class under the Plan either to accept or reject the Plan and may not split their vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted in tabulating votes to accept or reject the Plan.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## B.  Acceptance of the Plan

Except as permitted under Section 1129(b) of the Bankruptcy Code, the Bankruptcy Code requires, as a condition to confirmation, that each class of impaired claims votes to accept a reorganization plan.  However, as provided in Section 1129(b) of the Bankruptcy Code, notwithstanding that (i) a voting class does not accept the plan, or (ii) a non-voting class is deemed to reject the plan, the bankruptcy court can nevertheless confirm the plan if it satisfies the standards for "cram-down".

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance of holders of at least two-thirds in dollar amount <u>and</u> more than one-half in number of claims in that class that actually vote.  For the purpose of determining the dollar amount and the number of claims accepting the plan, only those who actually vote to accept or reject the plan are counted.  Thus, a class votes to accept the plan only if two-thirds in dollar amount and a majority in number of those

creditors actually voting cast their Ballots in favor of acceptance. Holders of claims who fail to vote are not counted as either accepting or rejecting the plan.

As discussed further below, the Debtor will use the cram-down provision of the Bankruptcy Code, if necessary, to confirm the Plan.

XI.
CONFIRMATION AND CONSUMMATION OF
THE PLAN

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan.

## A.    Disclosure Statement and Confirmation Hearing

Section 1125 of the Bankruptcy Code requires that an acceptance or rejection of a plan of reorganization by a holder of a claim may not be solicited unless, at the time of or prior to such solicitation, a written disclosure statement containing "adequate information" (as defined in Section 1125(a)(1)), as determined by the bankruptcy court after notice and a hearing.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan.

The Debtor intends to seek the approval of this Disclosure Statement and confirmation of the Plan. In connection therewith, the Bankruptcy Court has scheduled the Disclosure Statement Confirmation Hearing for _____ at _____ a.m. Eastern Standard Time. Notice of the Disclosure Statement Confirmation Hearing and the time for objections to the adequacy of this Disclosure Statement and confirmation of the Plan will be provided to, among other entities, all parties that filed notices of appearance in the Reorganization Cases and all parties who are entitled to receive notices pursuant to Rule 2002 of the Bankruptcy Rules. The Disclosure Statement and Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Disclosure Statement Confirmation Hearing or any adjournment thereof. In the event that this Disclosure Statement is not approved at the Disclosure Statement and Confirmation Hearing, the Disclosure Statement will be amended as appropriate and votes on the Plan will be resolicited in accordance with any order of the Bankruptcy Court.

Objections to the adequacy of this Disclosure Statement and confirmation of the Plan must be made in writing, specifying in detail the name and address of the entity objecting, the grounds for the objection, and the nature and amount of the Claim held by the objector. Objections must be filed with the Bankruptcy Court, together with proof of service, and served upon the parties identified below so as to be received no later than _____ at 4:00 p.m.:

(1) The Louisville Orchestra, Inc.
c/o Valenti Hanley & Robinson, PLLC
401 West Main St., Ste 1950
Louisville, Kentucky 40202
Attn: Mark A. Robinson
Telephone:   502/568-2100
Fax:             502/568-2101

(2) Office of the United States Trustee
601 West Broadway, Suite 512
Louisville, Kentucky 40202
Attn: Joseph J. Golden

Objections to the adequacy of this Disclosure Statement and confirmation of the Plan are governed by Rule 9014 of the Bankruptcy Rules and any local rules of the Bankruptcy Court. UNLESS AN OBJECTION TO THIS DISCLOSURE STATEMENT AND/OR CONFIRMATION OF THE PLAN IS TIMELY AND PROPERLY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## B.    Conditions to Confirmation of the Plan

At the Disclosure Statement and Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the conditions to confirmation under Section 1129 of the Bankruptcy Code are satisfied. Such conditions include the following:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

2.    The Debtor has complied with the applicable provisions of the Bankruptcy Code.

3.    The Plan has been proposed in good faith and not by any means forbidden by law.

4.    Any payment made or promised by the Debtor or by an entity issuing securities or acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Reorganization Case, or in connection with the Plan and incident to the Reorganization Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

5.    The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Reorganized Debtor or a successor to any of the Reorganized Debtor under the Plan and the appointment to, or continuance in, such office of such individual is consistent with the

interests of creditors and equity holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider.

6. With respect to each impaired class or subclass of Claims or each holder of an impaired Claim either has accepted the Plan or will receive or retain under the Plan, on account of the Claims held by such entity, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such entity would receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.

7. Each Class of Claims entitled to vote has either accepted the Plan or is not impaired under the Plan, or the Bankruptcy Court has confirmed the Plan, upon the motion of the Debtor, pursuant to its power to approve the Plan, even if each impaired Class entitled to vote has not accepted the Plan.

8. Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Cost of Administration Claims and Priority Non-Tax Claims will be paid in full on the Effective Date and that Priority Tax Claims will be paid in deferred Cash payments on account of such Priority Tax Claims over a period not exceeding six (6) years after the date of assessment of such Claims, having a value, as of the Effective Date, equal to the allowed amount of such Claims, provided that the Debtor have elected to pay Claims of $1,000.00 or less in one lump sum in accordance with Section 2.2 of the Plan.

9. At least one impaired class of Claims has accepted the Plan as determined without including any acceptance of the Plan by any insider holding a Claim in such class.

10. Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

11. All fees payable under 28 U.S.C. §1930, as determined by the Bankruptcy Court at the Disclosure Statement and Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

12. The Plan provides for the continuation after the Effective Date of payment of all retiree benefits at the level established under Section 1114(e)(1)(B) or (g) of the Bankruptcy Code at any time prior to confirmation of the Plan

for the duration of the period each of the Debtor has obligated itself to provide such benefits.

The Debtor believes that (i) the Plan will satisfy all the statutory provisions of Chapter 11 of the Bankruptcy Code; (ii) they have complied or will have complied with all of the provisions of the Bankruptcy Code; and (iii) the Plan is being proposed and will be submitted to the Bankruptcy Court in good faith.

1.    <u>Acceptance</u>.  As set forth above, holders of Claims in Class 3 (Secured Claim of Chase), Class 5 (Allowed Unsecured Deficiency Claim of Chase), Class 6 (Unsecured Deficiency Claim of FTB), Class 7 (Unsecured Lease Assumption Cure Claim of TKC) Class 8 (Secured Claims of TKC and FFA), Class 9 (General Unsecured Claims) and Class 10 (Unsecured Convenience Class Claims) under the Plan are entitled to vote and, therefore, must accept the Plan for it to be confirmed without application of the provisions described in ("*Confirmation Without Acceptance of All Impaired Classes*") below.  Such Classes of Claims will have accepted the Plan if the Plan is accepted, with reference to a Class, by at least two-thirds in amount and more than one-half in number of the Allowed Claims or Equity Interests of each such Class of Claims or Equity Interests that actually Vote.  If necessary, the Debtor intends to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.

2.    <u>Best Interests Test</u>.  With respect to each impaired class of Claims, confirmation of the Plan requires that each such holder either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To determine what holders of Claims of each impaired class would receive if the Debtor were liquidated, the Bankruptcy Court must determine the proceeds that would be generated from the liquidation of the properties and interests in property of the Debtor in a Chapter 7 liquidation case.  The proceeds that would be available for satisfaction of Unsecured Claims against in the Debtor would consist of the proceeds generated by disposition of the unencumbered equity in the properties and interests in property of the Debtor and the Cash held by the Debtor at the time of the commencement of the liquidation case.  Such proceeds would be reduced by the costs and expenses of the liquidation and by such additional administration and priority claims that may result from the termination of the business of the Debtor and the use of Chapter 7 for the purposes of liquidation.

The costs of liquidation under Chapter 7 of the Bankruptcy Code would include the fees payable to a trustee in bankruptcy, and the fees that would be payable to additional attorneys and other professionals that such a trustee may engage, plus any unpaid expenses incurred by the Debtor during the Reorganization Cases, such as compensation for attorneys, financial advisors, accountants and costs that are allowed in the Chapter 7 case.  In addition, Claims would arise by reason of the breach or rejection of obligations incurred and executory contracts entered into or assumed by the Debtor during the pendency of these Chapter 11 Cases.

The foregoing types of Claims and such other Claims which may arise in the liquidation cases or result from the pending Reorganization Case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay Allowed Unsecured Claims arising on or before the Petition Date.

To determine if the Plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of the liquidation of the properties and interests in property of the Debtor (net of the amounts attributable to the aforesaid claims) is then compared with the present value offered to such classes or subclasses of Claims under the Plan.

In applying the "best interests" test, it is possible that Claims in the Chapter 7 cases may not be classified according to the seniority of such Claims as provided in the Plan. In the absence of a contrary determination by the Bankruptcy Court, all Unsecured Claims arising on or before the Petition Date which have the same rights upon liquidation would be treated as one class for the purposes of determining the potential distribution of the liquidation proceeds resulting from the Chapter 7 cases of the Debtor. The distributions from the liquidation proceeds would be calculated ratably according to the amount of the Claim held by each creditor. Therefore, creditors who claim to be third-party beneficiaries of any contractual subordination provisions might have to seek to enforce such contractual subordination provisions in the Bankruptcy Court or otherwise. The Debtor believes that the most likely outcome of liquidation proceedings under Chapter 7 would be the application of the rule of absolute priority of distributions. Under that rule, no junior creditor would receive any distribution until all senior creditors are paid in full with interest, and no stockholder would receive any distribution until all creditors are paid in full with interest.

After consideration of the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 cases, including: (i) the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee; (ii) the erosion in value of assets in a Chapter 7 case in the context of the expeditious liquidation required under Chapter 7 and the "forced sale" environment in which such a liquidation would likely occur; (iii) the adverse effects on the salability of business segments as a result of the likely departure of key employees and the loss of customers; (iv) the delays and uncertainty inherent in the litigation of the Committee Adversary; and (v) the substantial increases in claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 cases, the Debtor has determined that confirmation of the Plan will provide each holder of a Claim with a recovery not less than it would receive pursuant to liquidation of the Debtor under Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is attached hereto as **Exhibit 5**.

The Debtor also believes that the value of any distributions from the liquidation proceeds to each class of Allowed Claims in a Chapter 7 case would be less than the value of distributions on a consolidating basis under the Plan because such distributions

in a Chapter 7 case would not occur for a substantial period.  It is likely that distribution of the proceeds of the liquidation could be delayed for two years or more after the completion of such liquidation in order to resolve Claims and prepare for distributions.  In the event litigation were necessary to resolve Claims asserted in a Chapter 7 case, the delay could be prolonged.

3.      Feasibility.  The Bankruptcy Code conditions confirmation of a plan of reorganization on, among other things, a finding that it not likely to be followed by the liquidation or the need for further financial reorganization of a debtor.  For purposes of determining whether the Plan satisfies this condition, the Debtor has analyzed the capacity of the Reorganized Debtor to service its obligations under the Plan.  As part of this analysis, the Debtor has prepared the Projections.  The Projections, and the significant assumptions on which they are based, are included in section V, entitled "Projections." Based upon its analysis of such Projections, the Debtor believes the Reorganized Debtor will be able to make all payments required to be made under the Plan.

The Debtor has prepared the Projections based upon certain assumptions that it believes to be reasonable under the circumstances.  The assumptions which are considered to be significant are described in section V entitled "*Projections*." The Projections have not been examined or compiled by independent accountants.  The Debtor makes no representation as to the accuracy of the Projections or the ability of the Reorganized Debtor to achieve the projected results.  Many of the assumptions on which the Projections are based are subject to significant uncertainties.  Inevitably, some assumptions will not materialize and unanticipated events and circumstances may affect the actual financial results.  Therefore, the actual results achieved may vary from the projected results and the variations may be material.  It is urged that all of the assumptions be examined carefully in evaluating the Plan.  The projections, therefore, may not be relied upon as a guaranty or other assurance of the actual results that will occur.  It is urged that all of the assumptions be examined carefully in evaluating the Plan.

4.      Confirmation Without Acceptance of All Impaired Classes.  PURSUANT TO SECTION 1129(b) OF THE BANKRUPTCY CODE, THE DEBTOR MAY AND, AND IF NECESSARY TO CONFIRM THE PLAN, SHALL, SEEK CONFIRMATION OR "CRAM-DOWN" OF THE PLAN.

The Bankruptcy Code contains provisions for confirmation of a plan of reorganization even if that plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it.  The Bankruptcy Court may confirm the plan at the request of a debtor if, as to each impaired class that has not accepted the plan, the plan "does not discriminate unfairly" and is "fair and equitable."  A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if the dissenting class will receive value relatively equal to the value given to all other similarly situated classes.  A plan of reorganization is fair and equitable within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or interests.  These provisions for confirmation of a plan despite

the rejection by one or more impaired classes of claims or interests are set forth in Section 1129(b) of the Bankruptcy Code.

If a class of secured claims rejects a plan, the plan may still be confirmed as long as the plan provides (i) for each holder of a secured claim (a) to retain the liens securing its claim, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claim, and (a) receives on account of such claim deferred cash payments totalling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; (ii) for the sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds as provided in clauses (i) or (iii) of this paragraph, or (iii) for the realization by each holder of a secured claim of the indubitable equivalent of such claims.

If a class of unsecured claims rejects a plan, the plan may still be confirmed as long as the plan provides (a) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (b) that the holder of any claim or any interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property at all.

5.  No Unfair Discrimination.  A plan of reorganization "does not discriminate unfairly" if (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are related to the legal rights of the nonaccepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or equity interests.  The Debtor believes that, under the Plan, all impaired classes and subclasses of Claims are treated in a manner that is consistent with the treatment of other classes of Claims to which their legal rights are related, if any, and no class or subclass of Claims will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims in such class or subclass.  Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class or subclass of Claims or Equity Interests.

6.  Fair and Equitable Test.  The Bankruptcy Code establishes different "fair and equitable" tests for secured creditors, unsecured creditors and holders of equity interest as follows:

Secured Creditors.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the indubitable equivalent of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens, with such liens to attach to the proceeds and the

treatment of such liens on proceeds as provided in clause (i) or (ii) of this subparagraph.

Holders of Equity Interests.  Either (i) each holder of an equity interest will receive or retain under the plan of reorganization property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such stock or (b) the value of the stock, or (ii) the holders of interests that are junior to the stock will not receive any property under the plan of reorganization, subject to the applicability of the judicial doctrine of contributing new value.

## C.    Consummation

The Plan will be consummated on the Effective Date.  Under the Plan, the term "*Effective Date*" means a date to occur within ten (10) days after the Confirmation Order becomes a Final Order; provided, however, that in no event shall the Effective Date occur earlier than the date of the satisfaction of each of the conditions precedent to the occurrence of the Effective Date of the Plan as described in Section 10.2 of the Plan unless waived pursuant to Section 10.3 of the Plan.  The Debtor believes that the Effective Date will occur on or before August 15, 2011 and that the distributions under the Plan will commence on or about such date.  The Debtor cannot, however, provide any assurances that the Effective Date will occur on such date or on any other date.

XII.
CONCLUSION

The Debtor believes that the Plan is in the best interest of all holders of Claims, and urges all holders of Claims to vote to accept the Plan and to evidence such acceptance by returning their Ballots in accordance with the instructions accompanying this Disclosure Statement.


Dated: May 30, 2011

Respectfully submitted,

**THE LOUISVILLE ORCHESTRA, INC.**


By:      /s/ Robert A. Birman
Name:   Robert A. Birman
Title:     Chief Executive Officer