# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| The Louisville Orchestra, Inc., | ) | Case No. 10-36321 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## LIMITED OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE WITH RESPECT TO PLAN OF REORGANIZATION

The American Federation of Musicians and Employers' Pension Fund (the "Fund"), by and through its undersigned counsel, hereby files this limited objection (this "Objection") to the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to Plan of Reorganization filed May 30, 2011 (the "Disclosure Statement") by the above-captioned debtor and debtor in possession (the "Debtor"). In support of this Objection, the Fund respectfully states as follows:

## Background

1. Prior to December 3, 2010, the date on which the Debtor filed its chapter 11 petition (the "Petition Date"), the Debtor was a participant in the Fund's pension plan (the "AFM Plan") pursuant to the terms of, among other documents, a collective bargaining agreement ("CBA") between the Debtor and the Louisville Federation of Musicians, Local 11-637, American Federation of Musicians (the "Union"), which CBA expired on May 31, 2011. In November 2010, on account of the Debtor's pre-Petition Date failure to make certain payments to the AFM Plan, the Fund terminated the Debtor's participation in the AFM Plan, thereby

giving rise to the Debtor's withdrawal liability to the Fund under the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (ERISA). Based on the formula set forth in ERISA, the Fund has computed the Debtor's withdrawal liability to be in the amount of $3,450,931. Concurrently with the filing hereof, the Fund is filing a proof of claim, which includes the withdrawal liability amount (the "<u>Withdrawal Liability Claim</u>") and a summary of the Fund's calculation of the Withdrawal Liability Claim.

2. On May 30, 2011, the Debtor filed its Disclosure Statement and Plan of Reorganization dated May 30, 2011 (the "<u>Plan</u>"). Neither the Disclosure Statement nor the Plan addresses the Withdrawal Liability Claim, the Debtor's proposed treatment of the Withdrawal Liability Claim or the Debtor's plan to seek reinstatement in the AFM Plan.[1]

3. On June 6, 2011, as follow up to a telephone conference between counsel for the Fund and counsel for the Debtor, counsel for the Debtor confirmed via electronic mail to counsel for the Fund that the "Debtor intends to resume contributions to the Fund as soon as the new CBA is reached."

### <u>Limited Objection</u>

4. Notwithstanding the representation by counsel for the Debtor that the Debtor intends to resume contributions to the Fund upon entry into a new CBA, the CBA between the Debtor and the Union that was in effect on the Petition Date has expired pursuant to its terms and

---

[1] The Fund's pre-Petition Date termination of the Debtor from participation in the AFM Plan is not necessarily fatal to the Debtor's future participation in the AFM Plan. The AFM Plan's trustees have in the past agreed to reinstate retroactively employers they have terminated due to delinquency upon such employers becoming current in their contributions, and the trustees could theoretically agree to do the same with the Debtor in this case. Thus, if the Debtor and the Union were to agree upon a CBA, which preserved the Debtor's present obligations to the Fund and the trustees were to reinstate the Debtor in the AFM Plan, the trustees could take the position that there was no withdrawal, thus eliminating the Withdrawal Liability Claim (and, presumably, along with it, any objection that the Fund may have to confirmation of the Debtor's Plan).

2

the Debtor and the Union have been "unable to reach an agreement for a new CBA" (Disclosure Statement § III.D.7). Nevertheless, the Plan is premised entirely upon the Debtor reaching an agreement with the Union on the terms of a new CBA. That is, the Debtor proposes to satisfy claims against it through "sufficient cash flow, . . . donations, grants and ticket sales," the generation of which requires that the musicians keep playing, which, in turn, requires that the Debtor and the Union enter into a new CBA. Yet, the Disclosure Statement fails to indicate that its entry into a new CBA with the Union is a condition to the effectiveness of the Plan. Moreover, there are no assurances that any new CBA will provide for the Debtor's continued participation in the AMF Plan.

5. The Plan does provide that, on the Plan effective date, "the Reorganized Debtor shall pay to the . . . Fund the sum of $43,486.11 in full and final satisfaction of the Debtor's remaining obligations under the CBA [(that expired May 31, 2011)] for pension benefits as provided by 11 U.S.C. § 1113(f)." Disclosure Statement § IV.B.2. The Debtor, therefore, characterizes the Fund's claim as "unimpaired." Disclosure Statement § IV.C.2.

6. If, by the proposed treatment in the Plan of the Fund's claims against the Debtor, the Debtor is indicating (as Debtor's counsel suggested) that it intends to (a) seek retroactive reinstatement to the AFM Plan, (b) remit to the Fund outstanding contribution amounts and (c) continue participation in the AFM Plan on a going forward basis (which necessitates the Debtor's entry into a new CBA with the Union providing for continued participation in the AMF Plan on a going-forward basis), then the Debtor must address each of those points in the Disclosure Statement and Plan and further demonstrate in its cash projections, which are based in part upon the Debtor's projected receipt of donations and grants, that the Debtor will be able to service its obligations to the Fund, in addition to its other obligations (*i.e.*, that the Plan is feasible). *See,*

3

*e.g., Save Our Springs (S.O.S) Alliance, Inc., et al. v. WSI (II)–COS, L.L.C.*, 632 F.3d 168, 173-74 (5th Cir. 2011) (affirming denial of plan confirmation where debtor's plan's feasibility hinged on willingness of debtor's donors to give). If, however, the Debtor is not proposing this treatment of the Fund's claims against the Debtor, and the Debtor does not intend to seek retroactive reinstatement to the AFM Plan and continued participation in the AFM Plan on a going forward basis, the Debtor's Disclosure Statement is materially misleading in that, among other things, it characterizes the Fund's claim as unimpaired, fails to address altogether the treatment of the Withdrawal Liability Claim (in fact estimating the aggregate amount of general unsecured Class 9 claims against the Debtor to be in the amount of approximately $185,000; *see* Disclosure Statement § IV.C.2) and fails to address in its cash projection show the Debtor will be able to satisfy the Withdrawal Liability Claim.

7. In any event, in its present form, the Disclosure Statement does not contain adequate information concerning crucial aspects of the Debtor's proposed treatment of the Fund's claims, which impacts all of the Debtor's other creditors. Section 1125(b) of the Bankruptcy Code requires that, before acceptance of a proposed plan may be solicited, the plan proponent must transmit to all holders of claims and interests a written disclosure statement containing "adequate information." Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan…

11 U.S.C. § 1125(a)(1).

8. Disclosure is a pivotal concept in chapter 11 reorganization proceedings and the Bankruptcy Code therefore obliges debtors to provide full and fair disclosure so that a hypothetical investor can make an informed judgment about the Plan and the treatment proposed for their claims. *See* 11 U.S.C. § 1125(b); *see also Gen. Elec. Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184, 188 (3d Cir. 1988); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("The importance of full disclosure is underlaid by the reliance upon the disclosure statement by creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'"); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated.").

9. Whether a disclosure statement contains adequate information is "determined by the facts and circumstances of each case." *Oneida*, 848 F.2d at 417. Although the Bankruptcy Code does not provide a standard in defining "adequate information," numerous courts have prescribed a list of typical material information that should be included in a disclosure statement. For example, in *In re Scioto Valley Mortg. Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988), the court adopted the following nineteen-point, non-exhaustive list of material information that should be found in a disclosure statement:

> (1) the circumstances that gave rise to the filing of the bankruptcy petition; (2) a complete description of the available assets and their value; (3) the anticipated future of the debtor; (4) the source of the information provided in the disclosure statement; (5) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; (6) the condition and performance of the debtor while in chapter 11; (7) information regarding claims against the estate; (8) a liquidation analysis setting forth the estimated return that creditors

5

would receive under chapter 7; (9) the accounting and valuation methods used to produce the financial information in the disclosure statement; (10) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor; (11) a summary of the plan of reorganization; (12) an estimate of all administrative expenses, including attorneys' fees and accountants' fees; (13) the collectability of any accounts receivable; (14) any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan; (15) information relevant to the risks being taken by the creditors and interest holders; (16) the actual or projected value that can be obtained from avoidable transfers; (17) the existence, likelihood and possible success of non-bankruptcy litigation; (18) the tax consequences of the plan; and (19) the relationship of the debtor with affiliates.

*In re Scioto Valley Mortg. Co.*, 88 B.R. at 170-171.

10. Acceptance of the Plan by parties entitled to vote and whether the Plan is confirmed by the Bankruptcy Court will ultimately turn largely on whether or not creditors entitled to vote believe that their recovery is adequate and appropriate. In order for the creditors to evaluate whether or not they are receiving an adequate recovery, they must receive adequate information on the values of the distributions proposed under the Plan. *See In re Oneida Ltd.*, 351 B.R. 79, 87 (Bankr. S.D.N.Y. 2006) (noting that creditor participation often hinges on the recoveries afforded creditors, which in turn, depends on the values espoused by the debtors) (*citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 441 (1968)). The creditors must also be informed about the feasibility of payments provided under the Plan.

11. Because the Disclosure Statement fails to set forth the basic information described herein, information that a typical creditor must have in order to make a reasonably-informed decision on the Plan, this Court should determine that the Disclosure Statement does not contain adequate information and require that the Debtor amend the Disclosure Statement and Plan prior to the Debtor's solicitation of votes on the Plan.

**Reservation of Rights**

12. To the extent that the Debtor modifies, amends or supplements the Disclosure Statement, the Fund reserves its rights to object further to the adequacy of any amended Disclosure Statement.

For the reasons stated above, the Fund respectfully requests that the Court deny approval of the Disclosure Statement unless and until it is amended to provide adequate information regarding the issues set forth herein and grant such other and further relief as the Court deems just and proper.

Dated: June 13, 2011  
     Louisville, Kentucky

Respectfully submitted,

*/s/ Ellen Arvin Kennedy, Esq.*
**DINSMORE & SHOHL LLP**
Co-Counsel for the American Federation of Musicians and Employers' Pension Fund
Lexington Financial Center
250 West Main Street, Suite 1400
Lexington, Kentucky 40507
Attn: Ellen Arvin Kennedy, Esq.
Telephone Number: (859) 425-1020
Facsimile Number: (859) 425-1099
Email: ellen.kennedy@dinslaw.com

-and-

**PROSKAUER ROSE LLP**
Lead Bankruptcy and ERISA Counsel for the American Federation of Musicians and Employers' Pension Fund
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Attn: Mark K. Thomas, Esq. &
  Peter J. Young, Esq.
Telephone Number: (312) 962-3550
Facsimile Number: (312) 962-3551
Email: mthomas@proskauer.com
pyoung@proskauer.com

-and-

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036-8299
Attn: Richard J. Corbi, Esq.
Telephone Number: (212) 969-3000
Facsimile Number: (212) 969-2900
Email: rcorbi@proskauer.com

-and-

**LOWENSTEIN SANDLER, P.C.**
Special Counsel for the American
Federation of Musicians and Employers'
Pension Fund
65 Livingston Avenue
Roseland, NJ 07068
Attn: Sharon L. Levine, Esq.
       S. Jason Teele, Esq.
Telephone Number: (973) 597-2500
Facsimile Number: (973) 597-2400
Email: slevine@lowenstein.com
       steele@lowenstein.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Limited Objection was served on this the 13th day of June, 2011 either via the ECF System, which will send an electronic notice of filing to counsel of record and all parties having filed a request for notice.

*/s/ Ellen Arvin Kennedy, Esq.*
*Co-Counsel for the American Federation of*
*Musicians and Employers' Pension Fund*

416517v1

8