UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

------------------------------------------------------ x
                                                       :
                                                       :   Chapter 11
In re:                                                 :
The Louisville Orchestra, Inc.                         :   Case No. 10-36321
                                                       :
                                                       :
                                                       :
      Debtor                                           :
                                                       :
------------------------------------------------------ x

**DEBTOR'S RESPONSE TO
OBJECTIONS TO CONFIRMATION**

The Louisville Orchestra, Inc., the debtor herein (the "Debtor"), by counsel, for its

response to the objections (collectively, the "Objections") filed by the Louisville Orchestra

Musicians' Association  and The Louisville Orchestra Musicians' Committee (collectively, the

"Musicians") [D.N.207], the Louisville Federation of Musicians and the American Federation of

Musicians (collectively, the "Union") [D.N. 208], and the American Federation of Musicians and

Employers' Pension Fund (the "Pension Fund") [D.N. 228] to the Debtor's First Amended Plan

of Reorganization [D.N. 201] (the "Plan"), states as follows:

I.      **INTRODUCTION**

At the outset, it is important to note that two of the three parties that have objected to the

Plan (the "Objecting Parties")-- the Musicians and the Union-- **are not even creditors**.  Their

collective bargaining agreement ("CBA") with the Debtor expired on May 31, 2011 and they

have been paid all wages owed under that agreement.  The only amount still due under the terms

of the expired CBA is the sum of $43,486.11 owed for contributions to the Pension Fund and

those amounts are to be paid **in full, in cash on the effective date** of the Plan (the "Effective

Date").  The Union is owed nothing whatsoever.

The other Objecting Party, the Pension Fund, is a newcomer to the case that has filed a general unsecured claim in excess of $3,000,000 for "withdrawal liability" based on its unilateral, purported termination of the Debtor.  At the same time, the Pension Fund has stated that it is willing and able to waive this draconian claim if the Debtor will enter into a new CBA with the Musicians.[1]  The Musicians refuse to agree to terms that are financially viable for the Debtor so, once again, the Musicians, who are not creditors, are in the position of trying to put the Debtor, a nonprofit organization that has been in existence for 75 years, out of business because Debtor won't agree to terms it can't afford.  Moreover, by pursuing its objection, the Pension Fund nonsensically seeks to guarantee that it will receive no distribution on account of its claim.[2]

Apart from the Pension Fund, the Debtor has obtained approval of its Plan by virtually all[3] other creditors, with acceptance by all impaired classes, except Class 9, that is dominated by the Pension Fund.  See Vote Tabulation [D.N.231].

## II.     THE PLAN IS FEASIBLE

All of the Objections to confirmation are essentially one and the same objection: the Objecting Parties argue that the Plan is not feasible without a new CBA and that the Debtor's projections are mere speculation.  However, a CBA is not a requirement for confirmation,[4] the Debtor already has cash available to make the vast majority of the payments due under the Plan

---

[1] See Pension Fund Objection [D.N. 228],  p. 5, fn 4.

[2] The liquidation analysis shows that, if the case were converted, there would be no distribution on account of unsecured claims.

[3] One other dissenting vote was cast in Class 9 by Tandem Public Relations in the amount of $5150 and another was cast in Class 10 by Grace Baugh Bennett, a musician, in the amount of $1000.  All other votes cast were in acceptance of the Plan.

[4] See *In re: U.S. Truck Company, Inc.*, 47 B.R. 932 (E.D. Mich. 1985)(plan confirmed in absence of CBA).

and future payments due under the Plan are essentially *de minimus*. Specifically, as detailed on Exhibit A attached hereto, total payments under the Plan are approximately $540,000. Of that amount, approximately $358,000 is due on the Effective Date. *See* Exhibit A. Based on commitments from donors, together with cash on hand, the Debtor currently has cash available to pay all payments due on the Effective Date. The balance of $182,000 is due in periodic payments spread over three years, which equates to $5,061 a month. Attached hereto as Exhibit B is a cash flow projection demonstrating that the Debtor can fund these payments.

As to the allegation that the Plan is based on "speculation" and is merely a "visionary scheme", the Debtor would show as follows:

1. The Debtor has sold in excess of $355,000 in ticket subscriptions for the 2011-2012 season. These sales occurred while the bankruptcy was pending and with no assurance of performances being given—the epitome of the uncertainty and speculation that the Objecting Parties complain of.

2. Similarly, the Debtor has received in excess of $2,350,000 in grants and donations during the pendency of this case and has additional commitments of $350,000 to fund the payments due under the Plan on the Effective Date.

3. For the prior 10 years, during other times of financial uncertainty, the Debtor received average annual donations of $3.8 million, which demonstrates the conservative nature of the Debtor's projections going forward. (The problem in the past has not been lack of donations, it instead was an unworkable and inflexible cost structure imposed by the collective bargaining agreement that has now expired.)

4. The Debtor has proposed a new business model that lowers its cost structure by $1.7 million and is in line with historical revenue.

5. Each of the elements of the cash flow projections proffered by the Debtor is based on

historical experience, adjusted where appropriate to account for future uncertainty.

These facts demonstrate that the Plan is no based on "speculation."

The Objecting Parties next assert that the Debtor cannot survive without giving

performances. However, as detailed on <u>Exhibit C</u>, the Debtor can maintain cash flow without

any performances for the next 9 months based on funding commitments and other anticipated

donations.

Finally, the Objecting Parties say that the Debtor cannot field a performing orchestra

without a new CBA. However, the Debtor will offer evidence that it is entirely feasible for the

Debtor to hire musicians to perform. For example:

1. The Debtor will offer evidence that skilled replacement workers can be hired

when a unionized work force is on strike.[5]

2. Studies show there is a vast over-supply of concert musicians relative to available

positions.[6] For example:

    A. The number of music performance graduates (supply) has continued to grow
       steadily since 1982, while job openings (demand) has stayed stagnant or
       decreased.

    B. The "supply" of aspiring symphony musicians is huge. According to a 2008
       Stanford University Business School study, a one year measure equaled 3,671
       students who majored in performance on a symphonic instrument.

    C. The number of annual vacancies is very small relative to the annual number of
       music performance graduates – 2 to 4 per year per Orchestra.

---

[5] See Affidavit of James U. Smith, Esq., attached hereto as <u>Exhibit D</u>.

[6] See **Symphony Musicians and Symphony Orchestras,** by Robert J. Flanagan**,** Graduate School of Business, Stanford University (January 2008), copy attached as <u>Exhibit E</u>; and **Musical Chairs**: *A Study of the Supply and Demand of Orchestra Musicians in the United States* – by Brandon Scott VanWaeyenberghe College-Conservatory of Music, University of Cincinnati (graduate thesis 2005), copy attached as <u>Exhibits F-1, F-2 and F-3</u>.

D. From 2003-05, job openings at ICSOM orchestras (sample size of 52 salaried American orchestras, of which the Debtor is one) were at an all-time low for a ten-year period.

E. Job openings in the largest American orchestras (Group 1) were down 34% between 1981 and 2007.

F. Job openings in the second largest American orchestras (Group 2, of which the Debtor is part) were down 34% between 1981 and 2007.

G. Looking at the 52 International Conference of Symphony and Opera Musicians (ICSOM)-member orchestras alone (of which Louisville is one), based on a 10-year analysis (1994-2003) there were job openings for only 6-10% of all music graduates in any given year; 90% or more of graduates could not find work in an ICSOM-level orchestra.

3.     The employment terms are reasonable and competitive with other orchestras in the Debtor's budget class (and in fact, better than that which is offered by the vast majority of all professional orchestras in this country).     The Debtor has offered the Musicians base compensation of $925 per week.[7]   Average base compensation for orchestras with budgets of $8.5 million and below is $931 per week and for orchestras with budgets of $7 million and below it is $875 per week.[8]

These facts are more than sufficient to demonstrate feasibility for purposes of confirmation.  "Feasibility is fundamentally a factual question since it necessarily depends upon a determination of the reasonable probability of payment." *In re Howard*, 212 B.R. 864, 878 (Bankr.E.D.Tenn.1997) *citing In re Foertsch*, 167 B.R. 555, 566 (Bankr.D.N.D.1994)). Additionally, "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility." *In re: Brice Road Developments, LLC*, 392 B.R. 274, 283  (6th Cir. BAP

---

[7] See attached Exhibits G-1 and  G-2, p. 8, Article.7.1.

[8] See chart attached as Exhibit H.

2008) *citing* 7 *Collier on Bankruptcy* ¶ 1129.03[11] (15th ed. rev.2006) (quoting *Computer Task Group, Inc. v. Brotby* (*In re Brotby*), 303 B.R. 177, 191 (9th Cir. BAP 2003).

In order to be feasible pursuant to § 1129(a)(11), "[t]he plan does not need to guarantee success, but it must present reasonable assurance of success." *In re Made in Detroit, Inc.*, 299 B.R. 170, 176 (Bankr.E.D.Mich.2003) (citing *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 649 (2nd Cir.1988)), aff'd, 414 F.3d 576 (6th Cir.2005). In order to sufficiently establish such reasonable assurance, "a plan must provide a realistic and workable framework for reorganization." *Id.* (citing *Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 1004 (E.D.Va.1994)). Moreover, just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required. *In re: Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992).

The above recitation of facts clearly demonstrates a "reasonable probability of payment," meets a "relatively low threshold of proof," constitutes "adequate evidence" of feasibility, provides "reasonable assurance of success" and provides "a realistic and workable framework for reorganization." *Id.* Conversely, the Objections are nothing more than "speculative prospects of failure" and cannot defeat feasibility. For these reasons, the Court should overrule the Objections, find that the Plan is feasible and order confirmation.

### III. There is No Basis In Law or Fact to Include the Assets of the Foundation or Trust in the Debtor's Estate.

In its objection, the Pension Fund asserts, without cogent analysis or any legal authority, that the assets of the Foundation and Trust should be considered assets of the Debtors estate. It is clear that those entities are separate and distinct from the Debtor and have their own governing

documents and restrictions on funding. The simple fact that they exist and have been (and continue to be) significant supporters of the Debtor does not mean their assets belong to the Debtor to do with as it pleases. There is simply no legal or factual basis for the Court to make such a ruling.

IV.     Release of Pension Fund Claims against Debtor's Officers and Directors

The Pension Fund suggests that it has not "had an opportunity to fully investigate" claims against the Debtor's officers and directors and thus objects to the proposed release. This case has been pending for nearly 9 months—more than ample time for the Pension Fund to conduct whatever investigation it desired. To suggest that it has not had sufficient time is simply untenable. The simple fact is that no such claims exist. The release is appropriate under the circumstances and the objection in this regard should be overruled.

V.     No Basis for a Liquidating Trust

The Pension Fund also suggests, without any authority, that the Court rewrite the Plan to include a material element not included therein by the Debtor, who currently has the exclusive right to propose a plan. The fact that some Chapter 11 cases have creditors committees certainly does not authorize such action, nor does the fact that no such committee was constituted in this case. Again, the Pension Fund has had 9 months to conduct whatever investigation it desired. That it failed to do so does not authorize the Court to graft a liquidating trust into the provisions of the Plan. Moreover, there is absolutely no reason to believe any such causes of action exist or that they would be cost effective to prosecute. Neither the Debtor nor its counsel are aware of any such causes of action, after extensive discovery and litigation during the pendency of the case. Accordingly, this relief should and must be denied.

WHEREFORE, the Debtor respectfully requests that the Court overrule the Objections and approve the Plan.

Respectfully Submitted

/s/ Mark A. Robinson
Mark A. Robinson
Daniel T. Albers, Jr.
Robert T. Wagner
Valenti Hanley & Robinson, PLLC
Suite 1950 One Riverfront Plaza
401 W. Main Street,
Louisville, Kentucky 40202
(502) 568-2100
(502) 568-2101 – Fax
**Counsel for Debtor, The Louisville Orchestra, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via electronic and/or regular mail (without exhibits as to first class mail recipients) this 11th day of August, 2011 as provided by the ECF system.

/s/ Mark A. Robinson
Mark A. Robinson