UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

------------------------------------------------------ x
                                                       :   Chapter 11
In re:                                                 :
The Louisville Orchestra, Inc.                         :   Case No. 10-36321
                                                       :
                                                       :
      Debtor                                           :
                                                       :
------------------------------------------------------ x

**DEBTOR'S MEMORANDUM OF LAW
IN SUPPORT OF CONFIRMATION OF
<u>FIRST AMENDED PLAN OF REORGANIZATION</u>**

The Louisville Orchestra, Inc., the debtor herein (the "Debtor"), by counsel, for its Memorandum of Law in Support of Confirmation of its First Amended Plan of Reorganization (the "Plan"), states as follows.[1]

### A. PRELIMINARY STATEMENT IN
### SUPPORT OF CONFIRMATION

After almost nine months of often sharply contested activity, this bankruptcy case is on the verge of a successful resolution. The Debtor has now proposed the Plan, based on months of negotiation, that provides for a fair and equitable distribution, is supported by essentially all but one of the Debtor's creditors and, most importantly, will permit the Debtor, an important community institution, to continue its operations.

Moreover, the Plan complies with all applicable provisions of the United states Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, including the requirements of 11 U.S.C. §§ 1122, 1123 and 1129.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Plan.

Furthermore, the Plan is supported by all but three creditors and one class of claims entitled to vote on the Plan.[2] Class 3 (Allowed Secured Claim of Chase), Class 5 (Unsecured Deficiency Claim of Chase), Class 6 (Unsecured Deficiency Claim of FTB), Class 7 (Unsecured Lease Assumption Cure Claim of TKC), Class 8 (Secured Claims of TKC and FFA), Class 9 (General Unsecured Claims) and Class 10 (Convenience Unsecured Claims) were entitled to vote on the Plan. Classes 3, 5, 6, 7, 8 and 10 voted overwhelming to approve the Plan. 100% of the members of Classes 3, 5, 6, 7 and 8 who submitted ballots voted to accept the Plan. With respect to Class 9, the Plan was accepted by 67% of those members submitting ballots.

The Debtors are submitting a Plan that is the result of the diligent efforts of the Debtor and the cooperation of most of the major parties in interest. This Chapter 11 Case has moved expeditiously from the Petition Date to this point and has yielded value for the Debtor's creditors. Therefore, this Court should enter an order confirming the Plan.

## B. BACKGROUND

The background of the Debtor has been set forth in detail in Sections I and II of the Debtor's First Amended Disclosure Statement [D.N. 200] (the "Disclosure Statement") filed with this Court on July 15, 2011 which the Debtor incorporates by reference, and shall not be related herein. However, a brief review of the procedural history relating to the filing of the Debtor's Plan is in order.

The Debtor formally began its plan confirmation process on May 30, 2011 by filing an initial disclosure statement for its plan of reorganization [D.N. 147] and its plan of reorganization [D.N. 148]. After a hearing was conducted by this Court on June 28, 2011 concerning the adequacy of the initial disclosure statement, the Plan and Disclosure

---

[2] See Tabulation of Votes filed herein on August 11, 2011 [D.N. 231].

Statement were filed with this Court on July 15, 2011. Pursuant to an Order of this Court entered on June 29, 2011 [D.N. 191], the Disclosure Statement was deemed approved upon filing pursuant to 11 U.S.C. § 1125.

### C. THE PLAN HAS BEEN APPROVED BY EVERY CLASS OF CREDITORS EXCEPT CLASS 9

Every impaired class of creditors is entitled to vote on the Plan. By virtue of the vote of the Pension Fund, Class 9, consisting of general unsecured creditors, is deemed to have rejected the Plan. Accordingly, not all impaired classed have accepted the Plan as required by 11 U.S.C. § 1129(a)(8), so the Debtor requests that this Court conduct a hearing to approve confirmation of the Plan under the "cram down" provisions of 11 U.S.C. § 1129(b). The complete voting results have been filed by this Court in a separate pleading, but the results of the voting of the Impaired classes are briefly summarized as follows:

Class 3
Number of Votes Accepting 1
Number of Votes Rejecting 0
Dollar Amount Accepting: $270,000
Dollar amount Rejecting 0

Class 5
Number of Votes Accepting 1
Number of Votes Rejecting 0
Dollar Amount Accepting $80,000
Dollar amount Rejecting 0


Class 6
Number of Votes Accepting 1
Number of Votes Rejecting 0
Dollar Amount Accepting: $10,000
Dollar amount Rejecting 0

Class 7
Number of Votes Accepting 1
Number of Votes Rejecting 0
Dollar Amount Accepting: $68,000
Dollar amount Rejecting 0

Class 8
Number of Votes Accepting 1
Number of Votes Rejecting 0
Dollar Amount Accepting $16,220.71
Dollar amount Rejecting 0

Class 9
Number of Votes Accepting 4
Number of Votes Rejecting 2
Dollar Amount Accepting: $42,074.89
Dollar amount Rejecting $3,136,774.00

Class 10
Number of Votes Accepting 10
Number of Votes Rejecting 1
Dollar Amount Accepting: $7895.75
Dollar amount Rejecting: $1000.00

## D. THE PLAN MEETS ALL REQUIREMENTS OF THE BANKRUPTCY CODE FOR CONFIRMATION

The Plan complies with all relevant sections of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure relating to confirmation of the Plan. In particular, the Plan fully complies with all of the requirements of 11 U.S.C. §§ 1123 and 1129.

1. **The Plan Fully Complies with the Applicable Provisions of 11 U.S.C. § 1129(a)(1)**

Section 1129(a)(1) of the Bankruptcy Code requires that a plan of reorganization comply with the applicable provisions of chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) of the Bankruptcy Code indicates that a principle objective of this provision is to assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the

contents of a plan of reorganization. *See* S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978); H.R. Rep. No. 595, 95th Cong., lst Sess. 412 (1977); *In re Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988); *In re S&W Enterprise*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984). As indicated below, the Plan complies with these provisions in all respects.

### a. The Plan Satisfies the Classification Requirements of 11 U.S.C. § 1122 By Placing Only Substantially Similar Claims or Equity Interests in Each Class

"Absent agreement to the contrary, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Section 1122(a) of the Bankruptcy Code, however, does not require that similar claims be classified together, only that claims grouped together in a class should be similar. *See Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.)*, 800 F.2d 581, 585 (6th Cir. 1986); *See also In re Kovich*, 4 B.R. 403, 405 (Bankr. W.D. Mich. 1980) ("There is no requirement that all claims which are 'substantially similar' be placed in the same class").

The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. There are 10 classes of Claims and Equity Interests under the Plan. Claims have been placed in a class only with other Claims that are substantially similar to other Claims within the class. Accordingly, the classification of Claims under the Plan satisfies the requirements of 11 U.S.C. § 1122.

### b. The Plan Meets the Requirements Set Forth in 11 U.S.C. § 1123(a)

Section 1123(a) of the Bankruptcy Code sets forth seven requirements with which every chapter 11 plan must comply. *See* 11 U.S.C. § 1123(a). The Plan fully complies with each requirement. First, the Plan designates classes of Claims and Equity Interests as required by section 1123(a)(1) of the Bankruptcy Code. *See* Section 3 of the Plan. The Plan does not classify Administrative Claims because they must receive the treatment specified in the Bankruptcy Code and cannot otherwise be impaired. *See* 11 U.S.C. §§ 1123(a)(1) and 1129(a)(9). Second, as required by section 1123(a)(2) of the Bankruptcy Code, Section 4 of the Plan states that Classes 1, 2 and 4 are not impaired under the Plan. *See* 11 U.S.C. § 1123(a)(2).

Third, Section 4 of the Plan specifies that Class 3 (Allowed Secured Claim of Chase), Class 5 (Unsecured Deficiency Claim of Chase), Class 6 (Unsecured Deficiency Claim of FTB), Class 7 (Unsecured Lease Assumption Cure Claim of TKC), Class 8 (Secured Claims of TKC and FFA), Class 9 (General Unsecured Claims) and Class 10 (Convenience Unsecured Claims) are impaired under the Plan. Section 4 of the Plan specifies the treatment of each impaired class of Claims as required by section 1123(a)(3) of the Bankruptcy Code. Fourth, all of the holders of Claims within each of the classes are treated identically under the Plan as required by section 1123(a)(4) of the Bankruptcy Code.

Fifth, Section 6 and other provisions of the Plan provide an adequate means for implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code. *See* 11 U.S.C. § 1123(a)(5). The proceeds generated from donations, grants and ticket sales, will provide the Debtor with adequate means to implement the Plan.

Sixth, section 1123(a)(6) of the Bankruptcy Code, which requires the inclusion of

certain provisions in a reorganizing debtor's corporate charter, is inapplicable to this Chapter 11 Case as the Debtor is a nonprofit corporation and has no equity interest holders.

Finally, 11 U.S.C. § 1123(a)(7) of the Bankruptcy Code provides that the selection of any officer, director or trustee under a plan be consistent with the interests of creditors and public policy. *See* 11 U.S.C. § 1123(a)(7). Section 6 of the Plan is consistent with the provisions of 11 U.S.C. § 1123(a)(7).

### 2. The Debtors Have Fully Complied With The Applicable Provisions of 11 U.S.C. §1129(a)(2)

Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a plan of reorganization comply with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(2). The legislative history and cases discussing section 1129(a)(2) of the Bankruptcy Code indicate that the purpose of the provision is to ensure that the plan proponent complies with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code. *See In Re Texaco, Inc.*, 84 B.R. 893 (Bankr. S.D.N.Y. 1988); *In re Prudential Energy Co.*, 58 B.R. 857 (Bankr. S.D.N.Y. 1986); *In re Butler*, 42 B.R. 777 (Bankr. E.D. Ark. 1984); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984); S. Rep. No. 989, 95th Cong., 2d Sess. 126; H.R. Rep. No. 595, 95th Cong., 1st Sess. 412. The Debtors have complied with the applicable provisions of the Bankruptcy Code, including the provisions of 1125 and 1126 regarding disclosure and plan solicitation and Bankruptcy Rules 3017, 3018 and 3019. The solicitation of acceptance or rejection of the Plan was (i) in compliance with all applicable nonbankruptcy laws, rules, and regulations governing the adequacy of disclosure in connection with such solicitation and (ii) solicited after disclosure to holders of Claims of

7

adequate information as defined in section 1125(a) of the Bankruptcy Code. *See* Order approving the adequacy of the Debtors' Disclosure Statement and establishing a voting deadline [D.N. 191]. Moreover, the Debtor and its directors, officers, employees, agents, affiliates and professionals have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code.

### 3. The Debtors Have Proposed The Plan in Good Faith Pursuant to 11 U.S.C. § 1129(a)(3)

The Plan has been "proposed in good faith and not by any means forbidden by law," as required by section 1129(a)(3) of the Bankruptcy Code. The good faith test of section 1129(a)(3) of the Bankruptcy Code "means that the plan was proposed with 'honesty and good intentions' and with a 'a basis for expecting that a reorganization can be effected.'" *See In re Johns-Manville Corp.*, 843 F.2d at 649 (citations omitted).

Good faith "is generally interpreted to mean that there exists a 'reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *In re Madison Hotel Assocs.*, 49 F.2d 410, 424-25 (7th Cir. 1984). For purposes of determining good faith under section 1129(a)(3), "the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code." *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000). "Good faith 'may exist when there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *In re Dow Corning Corp.*, 255 B.R. 445, 498 (Bankr. E.D. Mich. 2000).

The Plan is supported by all but one of the major economic parties in interest, thus evidencing their acknowledgement that the Plan provides fundamental fairness to

creditors. *See In re Stolrow's, Inc.*, 84 B.R. 167, 172 (9th Cir. BAP 1988) (good faith in proposing a plan "requires a fundamental fairness in dealing with one's creditors").

Moreover, the Debtors believe that the Plan allows creditors to receive the highest possible recoveries under the circumstances. As reflected in the liquidation analysis included in the Disclosure Statement, holders of Unsecured Claims would not receive any distribution in a chapter 7 liquidation. *See* Exhibit 5 to the Disclosure Statement. Additionally, the Plan attempts to maximize the value of the Debtor's estate by proposing distributions to creditors as promptly as possible under the circumstances of this Chapter 11 Case. Generally, such a plan meets the good faith standard under section 1129(a)(3) of the Bankruptcy Code. *See Toys & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

### 4. The Plan Provides For Bankruptcy Court Approval of Certain Administrative Payments Pursuant to 11 U.S.C. § 1129(a)(4)

Section 1129(a)(4) of the Bankruptcy Code requires that payments made by the Debtors on account of services or costs and expenses incurred in connection with the Plan or the Bankruptcy Cases either be approved or be subject to approval by the bankruptcy court as reasonable. *See* 11 U.S.C. § 1129(a)(4). A plan meets the requirements of section 1129(a)(4) when it provides that all payments to be made under the plan are subject to court approval. *See In re Future Energy Corp.*, 83 B.R. 470 (Bankr. S.D. Ohio 1988). Section 12 and all applicable orders under 11 U.S.C. §§ 105(a) and 328 and 330 establishing procedures for compensation and reimbursement of expenses for professionals provides a procedure for the allowance of professional fees. Thus, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code because any payments made or promised to be made by the Debtors to professionals for services

or for costs and expenses in, or in connection with, the Bankruptcy Cases must be approved pursuant to such orders.

### 5. The Identity of Certain Individuals Who Will Hold Positions Post-Confirmation Has Been Disclosed Pursuant to 11 U.S.C. § 1129(a)(5)

Section 1129(a)(5)(A)(i) of the Bankruptcy Code requires the proponent of a plan to disclose the identity of certain individuals who will hold positions with the debtor or its successor after confirmation of the plan. Section 1129(a)(5)(A)(ii) of the Bankruptcy Code requires that the service of such individuals be "consistent with the interests of creditors and equity security holders and with public policy." *In re Apex Oil Co.*, 118 B.R. 683, 704-05 (Bankr. E.D. Mo. 1990) (satisfied where debtors as well as creditors' committee believe control of entity by proposed individuals will be beneficial). The Debtor believes Section 6 of the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(5) of the Bankruptcy Code.

### 6. No Governmental Regulatory Commission Has Jurisdiction over the Debtors Pursuant to 11 U.S.C. § 1129(a)(6)

Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6). The Debtor's current business does not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after Confirmation.

### 7. The Plan Is In The Best Interests of Creditors And Interest Holders Pursuant to 11 U.S.C. § 1129(a)(7)

Section 1129(a)(7) of the Bankruptcy Code, the "best interests of creditors test," requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class–

>> (1) has accepted the plan; or
>
>> (2) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. §§ 1129(a)(7)(A)(i)-(ii). The best interests test focuses on individual, dissenting impaired holders of claims and interests, rather than entire classes of claims or interests. *See Bank of American National Trust & Savings Association v. 203 LaSalle St. Partnership,* 526 U.S. 434 (1999). The test requires that each holder of a claim or equity interest accept the plan or receive or retain property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

Under the best interests test, the court must find that each impaired creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated. *See 203 North LaSalle,* 526 U.S. at 440. As section 1129(a)(7) of the Bankruptcy Code makes clear, the liquidation analysis applies only to non-accepting impaired claims or equity interests. If a class of claims or equity interests unanimously accepts the plan, the best interests test is deemed satisfied for all members of that class.

Moreover, pursuant to section 1126(f) of the Bankruptcy Code, a class that is not impaired under the plan is conclusively deemed to have accepted the plan. Each holder of a Claim in Classes 1, 2 and 4 is unimpaired and is conclusively deemed to have accepted the Plan. Each holder of a Claim in Classes 3, 5, 6, 7 and 8 has unanimously accepted the

Plan. Therefore, the best interests test is satisfied with respect to these Classes. With respect to each creditor who has voted to reject the Plan, the best interests test is satisfied because such rejecting parties will receive under the Plan not less than the amount that such rejecting parties would receive under a hypothetical Chapter 7 liquidation.

The liquidation analysis set forth in the Disclosure Statement to the Plan demonstrates that the liquidation values that may be realized by the objecting creditors upon disposition of the Debtors' assets in chapter 7 would be significantly lower (i.e., none at all) than the value of the recoveries to creditors provided for under the Plan. *See* Exhibit 5 of the Disclosure Statement. Specifically, Unsecured Creditors would receive no distribution in a chapter 7 liquidation because Chase would receive all proceeds available for distribution. In contrast, the Plan provides that Unsecured Creditors will receive *more* than they would receive in a chapter 7. Accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(7).

### 8. Although The Plan Has Not Been Accepted By All Classes Entitled to Vote Pursuant to 11 U.S.C. § 1129(a)(8), The Plan Meets The "Cram down" Provisions of 11 U.S.C. § 1129(b)

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. *See* 11 U.S.C. § 1129(a)(8). Pursuant to 1126(c) of the Bankruptcy Code, a class of impaired claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the claims in that class that actually vote to accept the plan. A class that is not impaired under a plan, and each holder of a claim or interest of such class, is conclusively presumed to have accepted the plan. *See* 11 U.S.C. § 1126(f); *See also* S. Rep. No. 989, 95th Cong. 2d Sess. 123 (1978) (section 1126(f) of the Bankruptcy Code "provides that

no acceptances are required from any class whose claims or interests are unimpaired under the Plan or in the order confirming the Plan."); *In re Ruti Sweetwater*, 836 F.2d 1263, 1267 (10th Cir. 1988) ("For purposes of acceptance of a Plan, section 1126(f) provides that a class that is not impaired under the Plan is 'conclusively presumed' to have accepted the Plan.").

Classes 3, 5, 6, 7, 8, 9 and 10 were entitled to vote on the Plan. As previously discussed, Classes 3, 5, 6, 7, 8 and 10 have approved the Plan.

The Classes 1, 2 and 4 are unimpaired and are presumed to have accepted the Plan pursuant to 11 U.S.C. § 1126(f).

The Pension Fund has voted to reject the Plan and thus Class 9 is deemed to have rejected the Plan (the "Rejecting Class").

The Plan, however, satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Rejecting Class. Specifically, section 1129(b) of the Bankruptcy Code provides:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b). To determine whether a plan is "fair and equitable" with respect to a class of unsecured claims, Section 1129(b)(2)(B)(ii) of the Bankruptcy Code provides that "the holder of any claim that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim any property." The Plan satisfies

this requirement. There are no classes junior to the Rejecting Class that will receive any distribution under the Plan.

Having satisfied the requirements of 11 U.S.C. § 1129(b), the Debtors respectfully request that the Plan be confirmed notwithstanding the rejection of the Rejecting Class.

### 9. The Plan Provides For The Statutorily Mandated Treatment of Administrative And Priority Tax Claims Pursuant to 11 U.S.C. § 1129(a)(9)

Section 2 of the Plan provides for payment of Allowed Administrative Claims and allowed claims entitled to priority pursuant to sections 507(a)(3)-(6) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

### 10. At Least One Impaired Class Of Claims Has Accepted The Plan, Excluding The Acceptances Of Insiders Pursuant to 11 U.S.C. § 1129(a)(10)

Section 1129(a)(10) of the Bankruptcy Code provides that at least one impaired class of claims or equity interests must accept a plan, without including the acceptance of the plan by any insider. The Plan was accepted by six (6) classes of impaired creditors that were entitled to vote on the Plan and the Plan contains no insider-classes.

### 11. The Plan Is Feasible (Section 1129(a)(11))

Section 1129(a)(11) of the Bankruptcy Code requires the Bankruptcy Court to find that the plan is feasible as a condition precedent to confirmation. Specifically, the Bankruptcy Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

To establish feasibility for the confirmation of a plan of reorganization, a debtor must prove a chapter 11 plan's feasibility by the preponderance of evidence. *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) (rejecting "clear and convincing" as the applicable standard). The threshold of proof necessary to satisfy the requirement is relatively low. *In re Sea Garden Motel and Apartments*, 195 B.R. 294, 304 (Bankr. D. N.J. 1996) (quotations omitted). Under section 1129(a)(11) of the Bankruptcy Code, courts are merely required to determine whether a plan "offers a reasonable probability of success." *In re Landing Assoc., Ltd.*, 157 B.R. 791, 820 (Bankr. W.D. Tex. 1993) (no plan can offer absolute certainty, and all that Section 1129(a)(9) requires is that the Plan offer a reasonable probability of success); *In re T-H New Orleans Ltd. Partnership*, 116 F.3d 790, 801 (5th Cir. 1997) ("only a reasonable assurance of commercial viability is required"). The Tenth Circuit has held that

> The purpose of Section 1129(a)(11) is to prevent confirmation of visionary schemes that promise creditors and equity security holders more under a proposed plan than the Debtor can possibly obtain after confirmation. In determining whether a plan meets the requirements of 1129(a)(11)…the Bankruptcy Court has the obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.

*Travelers Ins. Co. v. Pikes Peak Water Co., (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1460 (10th Cir. 1985); *Heartland Fed. Sav. & Loan*, 994 F.2d at 1163 ("Only a reasonable assurance of commercial viability is required."); *The Mutual Life Ins. Co. of New York v. Patrician St. Joseph Partners (In re Patrician St. Joseph Partners)*, 169 B.R. 669, 674 (Bankr. D. Ariz. 1994) (plan meets feasibility standard if the plan offers a reasonable prospect of success and is workable).

There is more than a reasonable prospect of successful consummation of the Plan because the Debtors currently have sufficient cash available to administer this Chapter 11 case and make all but approximately $92,000 of the distributions under the Plan. The cash projections of the Debtor, based upon historical fact, demonstrate the Debtor will be able to continue operations and make the balance of the payments due.

**12. The Plan Provides For The Payment Of All Fees Under 28 U.S.C. § 1930 Pursuant to 11 U.S.C. § 1129(a)(12)**

As required by section 1129(a)(12) of the Bankruptcy Code, the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing shall be paid on the Effective Date of the Plan. *See* Section 13 of the Plan. The Plan, therefore, complies with section 1129(a)(12) of the Bankruptcy Code.

**13. The Plan Complies with 11 U.S.C. § 1129(a)(13)**

Section 1129(a)(13) of the Bankruptcy Code sets forth certain provisions for continuation of the payment of health, welfare and retiree benefits post-confirmation established pursuant to 11 U.S.C. §1114 during the pendency of the case. *See* 11 U.S.C. § 1129(a)(13). Since no such benefits have been established in this case, this section is inapplicable to the Plan.

### E. CONCLUSION

For the reasons set forth herein, and as will be further demonstrated as necessary at the Confirmation Hearing, the Debtors submit that the Plan satisfies all of the applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. Accordingly, the Debtors respectfully request that this Court overrule the objections of the Objecting Parties and enter an order confirming the Plan.

Respectfully Submitted:

/s/ Mark A. Robinson
Mark A. Robinson
Daniel T. Albers, Jr.
Robert T. Wagner
Valenti Hanley & Robinson, PLLC
Suite 1950 One Riverfront Plaza
401 W. Main Street,
Louisville, Kentucky 40202
(502) 568-2100
(502) 568-2101 – Fax
**Counsel for Debtor, The Louisville Orchestra, Inc.**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via electronic mail this 14th day of August, 2011 and by regular mail on August 15, 2011 as provided by the ECF system and upon the Master Service List.

/s/ Mark A. Robinson
Mark A. Robinson